A. Lawrence FARR, Plaintiff,

v.

CONTINENTAL WHITE CAP, INC., a Delaware Corporation, Continental Can Co., Inc., an Illinois Corporation, and Continental Group, Inc., a Delaware corporation, Defendants.

No. 90 C 4521.

United States District Court, N.D. Illinois, E.D.

April 30, 1991.

Elizabeth Hubbard, Denine K. Carr, Elizabeth Hubbard, Ltd., Chicago, Ill., Timothy G. Hagan, Beth M. Rivers, Donnelly, Huizenga, Wahl, Hagan, & Hergt, P.C., Detroit, Mich., for plaintiff.

Fredrick H. Bates, Edwin C. Thomas, III, Bell, Boyd & Lloyd, Chicago, Ill., for defendants.

ORDER

BUA, District Judge.

This suit involves an age discrimination claim brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Contract claims arising under state law have been brought as

well. The plaintiff in this case, A. Lawrence Farr, claims that he was constructively discharged on account of his age. Defendants Continental White Cap, Inc., Continental Can Co., Inc., and Continental Group, Inc. (collectively "White Cap") have moved for summary judgment. Defendants assert that judgment in their favor is warranted because Farr failed to timely file his discrimination claim. Alternatively, defendants argue that Farr was not subjected to constructive discharge conditions. For the reasons stated below, the court grants defendants' motion for summary judgment on the ADEA claim. The pendant contract claims are dismissed for lack of jurisdiction.

## FACTS

Farr was 31 years old when he started his tenure with White Cap. Throughout his career, he held a number of positions including Assistant General Manager—Sales, Regional Sales Manager, and Director of Marketing. His final position was as Director of Package Development.

On August 17, 1988, Farr was approached by managers and executives at White Cap.[1] They asked Farr whether he was interested in early retirement. When he responded in the negative, they mentioned that another position might be available. Sometime between September 23 and October 6, 1988, Farr was given the details of the position. The position was as National Accounts Manager. Farr would enjoy the same salary grade as his current job along with the same benefits package. A company car would also be available for his use. However, the position had its drawbacks. Farr would be servicing only one account, albeit White Cap's largest account. The position would not involve any supervisory duties. Instead, Farr would be reporting to a Regional Sales Manager. Farr would also be ineligible for promotions or salary increases in the new posi-

tion. Upon learning these details, Farr chose early retirement. Farr retired on June 30, 1989.

On July 11, 1989, Farr sent a letter to the Equal Employment Opportunity Commission ("EEOC") to register an age discrimination complaint against White Cap. The EEOC notified White Cap on July 26, 1989 that an ADEA charge had been filed against it. Farr filed this action on August 8, 1990.

## ANALYSIS

### I. Timely Filing of EEOC Charge

White Cap rests its first challenge on procedural grounds. The companies claim that Farr failed to timely file his ADEA claim. According to 29 U.S.C. § 626(d), civil actions which allege ADEA violations must be filed within 180 or 300 days after the alleged unlawful practice. The 300–day limit applies here since Illinois is a deferral state. *See Mitilinakis v. City of Chicago*, 735 F.Supp. 839, 841 (N.D.Ill. 1990). This 300–day limit can be likened to a statute of limitations. If a plaintiff does not file his claim within the period, he forfeits his claim. That is precisely what defendants argue: Farr failed to file within the 300–day limit, so he cannot proceed with his claim.

The court will begin by examining the parameters of the 300–day limit. At one end of the limitations period is the date of the alleged unlawful practice. The Supreme Court has determined that an alleged violation occurs and, thus, the filing limitations period commences "at the time the [adverse employment] decision [is] made and communicated...." *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). This end of the limitations period may be tolled by equitable modification. Indeed, the Seventh Circuit has applied equitable tolling to delay the running of the limita-

---

**1.** The parties disagree as to the date of this meeting as well as the details of subjects discussed at the meeting. Since this is a motion for summary judgment, the court must draw all reasonable inferences in the light most favorable to the nonmoving party—plaintiff Farr in

this case. *McCoy v. WGN Television*, 758 F.Supp. 1231, 1232 n. 3 (N.D.Ill.1990). Therefore, the court will accept Farr's version of the facts. In any event, these facts do not prove material to the issues in question.

tions period until "an employee receives unambiguous notice of the alleged discriminatory action...." *Mull v. Arco Durethene Plastics, Inc.*, 784 F.2d 284, 291 (7th Cir.1986).

At the far end of the limitations period is the date when a charge is filed with the EEOC. The relevant regulation requires that a charge be in writing, name the prospective respondent, and allege the discriminatory act. 29 CFR S1626.6 (1989). "The ADEA's charge-filing requirement was not intended to hold persons to elaborate pleading requirements...." *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 543 (7th Cir.1988), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989). On the contrary, a charge may be considered filed when the EEOC is given the kind of notice that "would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery." *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir.1983) *quoted in Mulcahey v. Hydro–Line Mfg. Co.*, 707 F.Supp. 331, 333 (N.D.Ill.1988). The Seventh Circuit has found that submission of an intake questionnaire satisfies these requirements. *Steffen*, 859 F.2d at 543. A letter sent by a grievant which details parties, facts, and charges also fulfills these requirements. *Mulcahey*, 707 F.Supp. at 334.

In this case, White Cap claims that the limitations period began to run on August 17, 1988, the date the company first discussed Farr's options. Defendants refer to July 11, 1989 as the day the charge was filed, that being the date Farr sent his letter to the EEOC. While the court agrees with defendants' contention that the charge was filed on July 11, 1989, the court disagrees with defendants' suggested commencement date. The court is more inclined to adopt a date in line with Farr's argument that the proper date for the start of the limitations period is one arising after September 14, 1988.

■ Contrary to defendants' assertions, Farr was not given unambiguous notice of the adverse employment decision on August 17, 1988. On that date, he was only informed that he could retire early or transfer to an unidentified position. With the vague details he was given about the position, he could not have known that the job he was being offered was, in fact, a demotion. Therefore, he could not have known at that time that he was being faced with a Hobson's choice—accept a demotion or retire early. Nor was it Farr's doing that he lacked this information. Farr sought details about the position, as indicated by his August 23, 1988 memorandum. The companies were dilatory in providing additional information, information which was peculiarly within their knowledge. Farr claims that he was not given information about the title of the position, its salary level, or its benefit package until personnel sent him a letter dated September 20, 1988. Even after being apprised of these preliminary details, it appears that issues such as the responsibilities associated with the position and its ineligibility for promotions or salary increases were not discussed, according to both parties' accounts, until, at the earliest, September 23, 1988. These were the details that Farr needed to form a clear picture of his position. Based on Farr's lack of information and the companies' role in keeping him uninformed, the court finds that Farr did not have clear knowledge of the demotion until September 23, 1988. Accordingly, the court adopts September 23, 1988 as the commencement date of the filing limitations period.

With the court's acceptance of September 23, 1988 as the beginning of the limitations period and July 11, 1989 as the filing date of the charge, the court arrives at 292 days as the time that elapsed before filing. The court concludes that Farr filed his ADEA claim within the 300–day limitations period.

## II. Constructive Discharge

Defendants' second challenge rests on substantive grounds. The companies contend that Farr has failed to make out a claim of age discrimination. Farr claims that he was constructively discharged on account of his age. To present such a claim, he must first establish a prima facie case of age discrimination. Farr must

show that (1) he is within the protected class (persons aged 40–70 years); (2) he had been performing his job satisfactorily; (3) he was constructively discharged; and (4) he was replaced by a younger individual. *McCoy v. WGN Television*, 758 F.Supp. 1231, 1235 (N.D.Ill.1990). If Farr can establish a prima facie case, the burden then shifts to White Cap to proffer a lawful, non-discriminatory reason for its actions. *Ayala v. Mayfair Molded Products Corp.*, 831 F.2d 1314, 1319 (7th Cir.1987). Should White Cap meet that burden, Farr must respond by showing that White Cap's reason is purely pretextual. He may do so by "showing either that a discriminatory reason more likely than not motivated the employer or that the employer's proffered explanation is incredible." *McCoy*, 758 F.Supp. at 1239.

Here, the problem does not lie with Farr's prima facie case. Farr was certainly within the protected class—he was 63 years old when he retired. During his tenure with White Cap, few complaints were raised about his work. Although Peter Browning, the executive vice-president of White Cap, makes reference to some performance problems, these problems were only mentioned in passing and they had occurred long before the events at issue in this case. It also appears that Farr was replaced by a younger individual. After his departure, his duties were assumed by the Director of Marketing, a man who was approximately 40 years old.

■ Farr even alleges a case of constructive discharge. Constructive discharge occurs where working conditions are "so difficult and unpleasant that a reasonable person in [the employee's] position would have felt compelled to [leave]". *Scott v. Oce Industries, Inc.*, 536 F.Supp. 141, 148 (N.D.Ill.1982). In this case, Farr claims that he was forced to choose between a demotion or early retirement. Courts have found that such a choice can be the equivalent of a constructive discharge. *See, e.g., Bernstein v. Consolidated Foods Corp.*, 622 F.Supp. 1096, 1101 (N.D.Ill.1984) (reasonable person may be constructively discharged by a demotion);

*Cazzola v. Codman & Shurtleff, Inc.*, 751 F.2d 53 (1st Cir.1984) (choice between drastic reduction in working conditions or early retirement may constitute constructive discharge).

A demotion is a materially adverse change in the terms or conditions of employment. *McCoy*, 758 F.Supp. at 1238. Defendants do not dispute the characteristics of the position, they only dispute its characterization as a demotion. The court concludes that the position Farr was offered had sufficient drawbacks to make it a demotion. Although he was offered salary and benefits commensurate with his old job, the new position was, essentially, a dead-end. The position presented no opportunities for promotions and/or salary increases. Farr's responsibilities would be similar to those he performed around 1969. And, he would be reporting to an individual whose position he had occupied 20 years previously. *See Cazzola*, 751 F.2d at 56 (fact that employee would be subordinate in department she created and previously ran could be considered in constructive discharge claim). His situation was similar to that of an employee told by supervisors that he had reached a "permanent plateau" in his career, a situation which has been found to be a constructive discharge. *See Reussow v. Eddington*, 483 F.Supp. 739 (D.Colo.1980) *discussed in Bernstein*, 622 F.Supp. at 1102. Considering all the circumstances, the court can conclude that Farr was constructively discharged. Farr, then, has presented the court with a prima facie case.

■ In response, defendants have posited non-discriminatory reasons for the choice they offered Farr. Defendants claim that it was Farr's position, rather than Farr, that was eliminated. It seems that the parent company of Continental White Cap was involved in an overall organizational structure review. According to Joseph Lucas, the president of Continental White Cap at the time, Continental White Cap was told to make any changes in its structure that were necessary to achieve maximum effectiveness. As part of the reorganization, four regional offices were

consolidated and three sales offices were closed. Lucas states that Farr's position, Director of Package Development, was slated for elimination because the position was no longer necessary. In fact, once Farr left the position, no individual was appointed to be Director of Package Development.

Additionally, defendants provide reasons as to why Farr was offered the National Accounts Manager position. Lucas states that White Cap hoped to capitalize on Farr's familiarity with the industry as well as his senior management contacts. Farr also had experience servicing the account for which he would have responsibility. Based on these explanations, the court finds that White Cap has satisfied its burden by offering non-discriminatroy reasons.

■ We now come to the crux of plaintiff's problem. Since defendants have offered non-discriminatory reasons, the burden returns to plaintiff to show that defendants' reasons are pretextual. This Farr has not done. He has neither claimed that defendants' reasons are pretextual nor offered any evidence to that effect. In fact, *any* age discrimination evidence, beyond the prima facie facts that Farr was 63 years old and was offered early retirement, is conspicuously absent. Although Farr alleges in his complaint that defendants engaged in a practice of age discrimination, Farr has not elaborated on that allegation or supplied supporting evidence. The court cannot infer a "practice" from a conclusory allegation that an individual of Farr's age was forced out of the company. (Farr Affidavit at 2.) An ADEA plaintiff is required to show that age was a determining factor in the adverse employment decision in the sense that the plaintiff would not have been the victim of an adverse employment decision but for his employer's motive to discriminate on the basis of age. *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir. 1988). Farr has not shown that age was the "but for" cause of his constructive discharge. Therefore, the court finds that he has not sustained the burden necessary to establish an ADEA claim.

## CONCLUSION

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In this case, issues of material fact are not in dispute; only the characterization of these facts has been contested. The court finds that defendants are entitled to judgment as a matter of law. By failing to rebut defendants' non-discriminatory reasons as pretextual, plaintiff has not sustained his burden. The court therefore, grants defendants' motion for summary judgment on the ADEA claim. As for the remaining contract claims, the court dismisses them for lack of jurisdiction. The court cannot conclude from the present state of the record that diversity jurisdiction exists which would allow it to retain jurisdiction over the pendant state claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed.")

IT IS SO ORDERED.