**Ralph MONACO, Plaintiff,**

v.

**FUDDRUCKERS, INC., Defendant.**

**No. 89 C 9031.**

United States District Court,
N.D. Illinois, E.D.

April 17, 1992.

Ramon Martinez, Jr., Banta, Cox & Hennessy, Chicago, Ill., Ralph Monaco, Sauk Village, Ill., for plaintiff.

Paul R. Garry, Keith A. Dorman, Katten, Muchin & Zavis, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Ralph Monaco brings this action against defendant Fuddruckers, Inc., under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (ADEA). Before us now is defendant's motion for summary judgment. For the reasons below, we grant defendant's motion.

### I. FACTS [1]

Monaco was 38 years old when he started working at Fuddruckers in defendant's Matteson, Illinois restaurant on July 9, 1985. He was an hourly employee and worked as a butcher. He also periodically assisted as a butcher-trainer during the openings of other Fuddruckers restaurants. Monaco's job performance was always satisfactory, as evidenced by favorable reviews he received.

Marc Mackiewicz, another Fuddrucker's employee, was promoted from assistant manager to manager of the Matteson restaurant effective June 8, 1987. Monaco had expressed to Mackiewicz an interest in being promoted to the position of shift supervisor, but never received such a promotion. While Monaco was working at Fuddruckers, however, others were promoted to shift supervisor. On February 9, 1987, Mary Dwyer was promoted to shift supervisor. In response to Monaco's questions, Mackiewicz told Monaco that he did not get the promotion because he was old. Effective March 6, 1987, Kirby Dorsey was promoted from cook to shift supervisor.[2] Dorsey was younger and had less experience with Fuddruckers than Monaco. Mackiewicz did not respond to Monaco's questions about why Dorsey, and not Monaco, had been promoted. On several occasions after this and before February 22, 1988, Mackiewicz told plaintiff he was old to work as a butcher and that he should resign.

Sometime in late 1987, Fuddruckers began using boxed beef instead of hanging-beef forequarters. This change decreased the amount of butcher-time required to prepare the beef used in the Fuddruckers restaurants. On December 31, 1987, Fuddruckers cut Monaco's pay from $8.00 per hour to $5.75 per hour and also reduced by approximately half the number of hours per week he worked. Monaco felt he was entitled to two weeks of vacation per year but was told he would get only one week. He repeatedly requested a second week of vacation from Mackiewicz, who repeatedly denied his request because in June of 1987 Fuddruckers changed its vacation policy for all hourly employees.[3]

1. A grant of summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Renovitch v. Kaufman,* 905 F.2d 1040, 1044 (7th Cir.1990). The movant has the burden of demonstrating a lack of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In making this determination, we examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," resolving all doubts in favor of the non-movant. Fed. R.Civ.P. 56(c). For that purpose we are "not required to draw every conceivable inference from the record—only those inferences that are reasonable," in favor of the non-movant. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). The facts recited reflect the above standard.

2. Monaco claims that Dwyer's promotion occurred sometime later in 1987, after Mackiewicz had become the manager. Also, Monaco claims Dorsey was promoted on January 1, 1987. The affidavit of Charles Redepenning, Jr. (senior vice president and general counsel for Fuddruckers, Inc.) and the payroll exhibits attached by defendant indicate that the dates of Dorsey's and Dwyer's promotions were as indicated in the text above. Plaintiff has no evidence to contradict these affidavits and exhibits, nor does plaintiff dispute defendant's representations. We accept defendant's dates, even drawing all reasonable inferences in Monaco's favor.

3. Fuddruckers vacation policy provided for only one week of vacation per year to hourly employees after one year of service.

In late December 1987 Monaco was asked to train Tom Bertram as a butcher. Bertram was 18 years old. There were no other butchers working in the Matteson restaurant at that time. When plaintiff asked why he had to train Bertram and why Bertram was getting more hours than Monaco, he was again told it was because he was old.

Plaintiff prepared his own letter of recommendation for Mackiewicz to sign, which he did on February 20, 1988. The following Monday, February 22, 1988, Monaco once again asked Mackiewicz for his second week of vacation. When Mackiewicz again denied Monaco's request, Monaco walked off the job. He requested his job back two or three days after he quit, and was told he could not have it back. At the time he quit, Monaco was the oldest employee at the Matteson restaurant.[4]

Plaintiff filed a charge of age discrimination with the Illinois Department of Human Rights on June 21, 1988. This charge was cross-filed with the Equal Employment Opportunity Commission.

## II. DISCUSSION

Plaintiff claims that he was constructively discharged and subjected to many adverse changes in his working conditions for discriminatory reasons. He argues his refusal to resign caused Mackiewicz or Fuddruckers to take actions to force him to resign. These changes include decreases in wages, hours, and vacation time, as well as being passed over for promotions.

The direct method and the indirect method are the two ways a plaintiff may establish age discrimination. The direct method is the mixed-motives analysis set out in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1794, 104 L.Ed.2d 268 (1989).[5] This method is "appropriate when both legitimate and illegitimate considerations played a role in an adverse employment decision," *Greanias v. Sears, Roebuck & Co.*, 774 F.Supp. 462, 471 (N.D.Ill.1991), and when *direct* evidence of discrimination is available. *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir.1991). The indirect method "is the familiar ping-pong approach dictated by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) as rearticulated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)." *Greanias*, 774 F.Supp. at 471. This method is appropriate in cases in which employment decisions were based on either legitimate or illegitimate considerations. *Id.* at 471. "The special virtue of the indirect method of proof is that it allows victims of age discrimination to prevail without presenting *any* evidence that age was a determining factor in the employer's motivation." *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409–10 (7th Cir.1984) (emphasis in original). Monaco claims to satisfy both the direct and indirect requirements of proof. We will analyze the summary judgment motion under both of these methods.

### A. *Direct Method*

The direct evidence plaintiff offers are the comments made by his manager, Mackiewicz, to the effect that Monaco was too old for the job and should resign. In other words, these comments are offered as direct evidence that the adverse conditions

---

**4.** Monaco has identified many other events and facts to demonstrate his working conditions. Among these are the following. Monaco received a bonus on only one of the occasions when he assisted as a butcher-trainer. After his hours were reduced, Monaco worked five to seven hour shifts without being given a break. In order to get more hours worked, Monaco had in the past been allowed to work in areas of the restaurant other than the butcher area. At some point, he was no longer allowed to do this. As of November 1987, he was no longer responsible for scheduling any other employees and

Mackiewicz took over the function of beef ordering. In November 1987, defendant stopped paying Monaco an additional $.50 per hour for training other employees. Monaco had to work in a cooler without a protective coat on November 2, 1987. He had to lift heavy beef forequarters without assistance on November 9, 1987.

**5.** Though *Price Waterhouse* was a Title VII case, its approach is also applicable in the ADEA context. *Greanias v. Sears, Roebuck & Co.*, 774 F.Supp. 462, 471 n. 12 (N.D.Ill.1991).

plaintiff faced (allegedly amounting to a constructive discharge) were motivated by age discrimination.

To establish an ADEA violation, Monaco must demonstrate that he "suffered a *materially adverse* change in the terms or conditions of [his] employment because of [his] employer's discriminatory conduct." *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 885 (7th Cir.1989) (emphasis in original).[6] Monaco's wages and hours were cut by a significant amount, and he alleges he was denied a week of his vacation. We cannot say as a matter of law that such employment decisions were not materially adverse ones. For purposes of this summary judgment motion, we view the wage, hour and vacation-time cuts, as well as the two allegations of failure to promote, as materially adverse employment decisions within the meaning of *Spring*.

 Under the direct evidence method, Monaco must prove that age was a basis of the employment decision. *McCarthy*, 924 F.2d at 686. In other words, Monaco must show that age was a substantial factor in, *i.e.*, a "motivating part" of, the decision. *Greanias*, 774 F.Supp. at 472, *quoting Price Waterhouse*, 490 U.S. at 250, 109 S.Ct. at 1790.[7] Age-related remarks at work do not inevitably prove that age

played a part in a decision; rather, plaintiff must show that Fuddruckers actually relied on the remarks in making its decisions. *McCarthy*, 924 F.2d at 686. "Stray remarks in the work place ... cannot justify requiring the employer to prove that its ... decisions were based on legitimate criteria." *Id.* at 686, *quoting Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. at 1804 (O'Connor, J., concurring). If a plaintiff succeeds in showing that age was a basis of an employment decision, then the defendant must prove by a preponderance of evidence that the same employment decision would have been made in the absence of any age consideration. *McCarthy*, 924 F.2d at 686.

"Unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of a discriminatory" decision. *Id.* at 686–87. Therefore, Monaco must show a causal connection between his age and the material adverse changes. *Greanias*, 774 F.Supp. at 473. Monaco does maintain that the age-based comments were made by Mackiewicz during the period of time when Monaco's working conditions were changing. He also claims that age was given as the reason for some of the adverse changes by

**6.** Plaintiff describes many conditions of his employment presumably caused by Fuddruckers, some of which are material adverse changes, some of which are not. At this point, we must determine if defendant has shown a lack of a genuine dispute as to whether plaintiff was subjected to materially adverse changes in his employment due to his age. Plaintiff claims that Bertram was taking away his hours and that Mackiewicz said it was because Monaco was old. But in his deposition, Monaco makes it clear that Bertram worked only when Monaco was training him and on Sundays (Monaco's day off), and that Bertram did not get more *butcher* hours than Monaco. Monaco further admits Fuddruckers needed at least two trained butchers. Thus, under these circumstances, the fact that Bertram also worked at the Matteson restaurant does not in itself constitute a materially adverse employment change.

Most of the conditions plaintiff describes are isolated incidents, not relevant to the situation that existed when plaintiff quit on February 22, 1988. Many are not relevant because they relate solely to the time when Fuddruckers was still using hanging-beef forequarters. Thus, we

do not address every other condition of Monaco's employment that he proffers—such as working one day in a cooler without a coat or one day lifting heavier than usual beef pieces—because, as a matter of law, these are not the type of materially adverse changes that are contemplated under the ADEA.

**7.** This opinion occasionally refers to what Monaco must "show" or "prove" to demonstrate discrimination. Often, this is the language used by the ADEA cases. *See McCoy v. WGN Television*, 758 F.Supp. 1231, 1235 n. 8 (N.D.Ill.1990). "It should, however, be emphasized that in the present context—involving opposition to a summary judgment motion—all [Monaco] must do is to advance evidence that (with reasonable inferences in his favor) creates a material factual issue, rather than to prove his case by a preponderance of the evidence. Though this opinion often uses the shorter locution of 'proof' or 'showing' to avoid the constant awkward repetition of the lengthier 'raise a genuine issue of material fact' phraseology, this Court has throughout applied the proper Rule 56 standard." *Id.*

Mackiewicz. We will look at each adverse decision.

■ Plaintiff cannot demonstrate (and does not even allege) a causal connection between his age and the cutting of his wages. He admits that his wages were cut as a result of defendant's decision to reduce costs, as follows:

> Coincident with Mackiewicz's discriminatory treatment of Plaintiff, Defendant in December 1987 or January 1988, decided to reduce costs through the use of precut boxed beef, as opposed to the cutting of beef fore-quarters. This resulted in the reduction of Plaintiff's wage rate from $8.00 per hour to $5.75 per hour.

Pltf's memo. in opposition, p. 2. The fact that the decision may have been made *coincident* with some discriminatory comments does nothing to establish a causal link. Plaintiff's belief that everything was done to him with the purpose of forcing him to quit does not help his cause. "Having conceded that age was not a factor, the plaintiff cannot prove discrimination through either direct or indirect proof." *Skagen v. Sears, Roebuck & Co.*, 910 F.2d 1498, 1500 (7th Cir.1990). Without this link, plaintiff does not satisfy his burden with respect to his wage cuts.

Plaintiff's claim that his hour cuts were age-motivated does not fare much better. He claims that his hours were cut along with his wages and that no reason was given for the hour reduction. There is no showing that the several alleged comments by Mackiewicz are in any way causally related to the decision to cut his hours, let alone a substantial factor in the decision.

Plaintiff's claim of losing vacation time due to his age also fails. Plaintiff admits that the company vacation policy changed for all hourly employees, but again seems to rely on contemporaneous age-based comments. As with the wage reduction, this coincidence, without more, is not sufficient.

Monaco claims that the promotions to shift supervisor of Mary Dwyer and Kirby Dorsey were promotions that he should have received, but for his age. In each case Monaco apparently spoke to Mackiewicz concerning the reasons others were promoted and not Monaco. Regarding the Dorsey promotion, Mackiewicz did not respond to Monaco. Regarding the Dwyer promotion, Mackiewicz apparently attributed the decision to Monaco's age.

The problem facing Monaco is that these promotions were made prior to the time Mackiewicz was himself promoted to manager effective June 8, 1987.[8] Thus, any age-based remarks made by Mackiewicz surrounding the promotions were not related to the employment decisions. Mackiewicz was not the decisionmaker with respect to these promotions. Statements by non-decisionmakers are not sufficient under the direct method to create a genuine issue of material fact as to whether a particular decision was age-motivated. *McCarthy*, 924 F.2d at 686.

Thus, to the extent Monaco bases his claim on direct evidence of discrimination, this evidence is insufficient as a matter of law to show that age was a substantial factor in any employment decisions. *See Greanias*, 774 F.Supp. at 472. Monaco "did not establish facts from which a reasonable juror could conclude that the impermissible factor of [age] played a role" in any of the employment decisions made by Fuddruckers. *McCarthy*, 924 F.2d at 687.

■ Even if we assume that Monaco had established a *prima facie* case of discrimination (*i.e.* showing that age was a basis) under the direct method, his claim still must fail. Under the direct method, if the plaintiff states a *prima facie* case, the burden then falls on the defendant to prove

---

8. Actually, Monaco's first problem is that he never filed a charge of discrimination concerning these alleged failures to promote with the Illinois Department of Human Rights or the Equal Employment Opportunity Commission. According to 29 U.S.C. § 626(d) and under Illinois law, civil actions alleging violations of the ADEA must be filed within 300 days after the alleged unlawful practice or else the plaintiff forfeits his claim. *Farr v. Continental White Cap, Inc.*, 762 F.Supp. 814, 815 (N.D.Ill.1991), *vacated on other grounds*, 774 F.Supp. 522 (N.D.Ill.1991). Though this fact in itself is enough for us not to consider these events, we take a different route to our decision.

by a preponderance of the evidence that it would have made the same employment decision even without taking age into account. *McCarthy*, 924 F.2d at 686. We would conclude, after reading the facts with all reasonable inferences in favor of Monaco, that Fuddruckers would have made the same decisions without considering age. The decision to change from hanging beef to boxed beef was made at the central management level. It is uncontested that this change resulted in a shortening of the time required for a butcher to process beef. Charles Redepenning's affidavit, explaining that the decision to change from hanging to boxed beef included a decision to cut wages and hours for all Fuddruckers skilled butchers, is uncontroverted. Similarly, the change in the vacation policy was done at the central management level and applied to all hourly employees. Plaintiff's only evidence contrary to this conclusion are the age-based comments, which are insufficient to raise a genuine issue of material fact on this issue.

The direct evidence of discrimination proffered by Monaco is insufficient to avoid summary judgment. We now look to the indirect method.

## B. *Indirect Method*
### *Prima Facie* Case

Under the indirect method, and based on a claim of constructive discharge, a plaintiff must first establish a *prima facie* case of age discrimination. To do this a plaintiff must show that

(1) he is within the protected class (persons aged 40–70 years); (2) he had been performing his job satisfactorily; (3) he was constructively discharged; and (4) he was replaced by a younger individual.

*Farr v. Continental White Cap, Inc.*, 762 F.Supp. 814, 817 (N.D.Ill.1991), *vacated on other grounds*, 774 F.Supp. 522. If the plaintiff can establish a *prima facie* case, then the burden of persuasion shifts to defendant to articulate legitimate reasons for its actions. *Id.* at 817. If the defendant is successful, the burden of persuasion again falls on the plaintiff to show that the reasons proffered by defendant

are purely pretextual, by showing either that defendant was more likely than not motivated by discriminatory considerations or that the defendant's proffered reasons are incredible. *Id.* at 817.

Monaco has been at least 40 years old since August 1986 and is therefore within the protected class. It is uncontested that Monaco had been performing his job satisfactorily. Thus, these first two elements of the *prima facie* case are satisfied.

There might be a question whether Monaco was replaced by a younger individual. However, when Monaco left Fuddruckers it appears that his duties were assumed by Bertram, an employee substantially younger than Monaco. Therefore, we find that plaintiff has also satisfied this element of the *prima facie* case. *See Farr*, 762 F.Supp. at 817.

Fuddrucker's major argument is that plaintiff has failed to show adequately that he was constructively discharged. Rather, according to defendant, Monaco voluntarily and unreasonably quit his job at Fuddruckers. Thus, whether Monaco was constructively discharged is the last element of the *prima facie* case which remains to be analyzed.

### Constructive Discharge

■ A constructive discharge occurs when working conditions are "so difficult and unpleasant that a reasonable person in [the employee's] position would have felt compelled to [leave]." *Farr*, 762 F.Supp. at 817, *quoting Scott v. Oce Industries, Inc.*, 536 F.Supp. 141, 148 (N.D.Ill.1982). Also, an "employee must seek legal redress while remaining in his or her job unless confronted with an 'aggravated situation' beyond 'ordinary' discrimination." *Brooms v. Regal Tube Co.*, 881 F.2d 412, 423 (7th Cir.1989), *quoting Bailey v. Binyon*, 583 F.Supp. 923, 929 (N.D.Ill.1984).

Monaco claims that his working conditions were such that he felt compelled to leave and, moreover, that he was faced with an "aggravated situation" beyond "ordinary" discrimination. It is undisputed that Monaco did not seek legal redress

while on the job.[9] We confine our analysis of the constructive discharge issue to the age-based comments made by Mackiewicz, the failure to promote, and the cuts in hours, wages and vacation time. This focus is appropriate in light of plaintiff's own characterizations of the reasons he resigned. Monaco indicates that the age-based comments contributed to his intolerable working conditions, but he makes clear that it was the loss of wages and benefits that caused him to quit.[10]

The occurrences of verbal harassment by Mackiewicz amounted to about four times over a six-month period when Mackiewicz said that Monaco was old and that he should resign. "[A]n employee may not be unreasonably sensitive to his working environment." *Brooms*, 881 F.2d at 423, *quoting Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981). These age-based comments, while extremely inappropriate, do not rise to the level of an "aggravated situation" beyond "ordinary" discrimination. *See Brooms*, 881 F.2d 412; *Bailey*, 583 F.Supp. 923. Therefore, the alleged comments do not support plaintiff's constructive discharge claim.[11]

One attribute of the indirect test is that it can be employed with absolutely *no* evidence of age discrimination. *La Montagne*, 750 F.2d at 1409–10. However, if we know that age was not a factor in a particular decision, the decision cannot be used to show constructive discharge based on age. *Skagen*, 910 F.2d at 1500.[12] *Skagen* was a case where it was stipulated that age did not play a role in the decision. Here we have what amounts to a concession that age played no role in the decision to cut Monaco's wages. As seen above, plaintiff admitted the discriminatory treatment was *coincident* with defendant's decision to reduce costs. *Supra*, at 949. If the decision to reduce costs resulted in Monaco's wage reduction, then plaintiff's wage reduction cannot be used as a basis for constructive discharge.

Even if we assume Monaco's wage cut can be used to show constructive discharge, the result will ultimately be the same. Monaco's wage cut was accompanied by a substantial cut in hours, which, by itself, had a great effect on Monaco's income. These cuts can be likened to a demotion, which has been found to suffice

---

**9.** As discussed above, Monaco describes many working conditions allegedly caused by Fuddruckers with the intent to force him to quit. We have considered all the circumstances and do not address all details specifically. Those things not addressed are not materially adverse and, as a matter of law, not things which would compel a reasonable person to resign. They certainly do not represent circumstances *beyond* ordinary discrimination. *See* fn. 6, *supra*.

**10.** For example, in his amended complaint, plaintiff described his predicament as follows:
Do [sic] to the economic hardship I had to incur because of my loss of *benefits, salary* and cuts in my *hours*. [sic] I was left with no alternative but to resign my position Feb. 22, 1988.
Pltf's amend. cplt. ¶ 23 (emphasis added). Also, at page 291 of plaintiff's deposition:
Q. You came in to work on Monday, the 22nd?
A. Yes.
Q. Did anything happen that day?
A. I worked for about 45 minutes.
Q. Then what happened?
A. I asked [Mackiewicz] for my vacation.
 * * * * * *
Q. What did you say to him and what did he say to you?

A. I said, am I going to get my vacation? He said no, you ain't getting one.
Q. So then what happened?
A. So then I left and he was standing up— either by the office or up by the counter, and I left.

**11.** Similarly, the two instances of Monaco not receiving a promotion do not support his constructive discharge claim. "A failure to promote is insufficient in itself to result in a constructive discharge." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1256 n. 4 (4th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986). Also, the promotions at issue were too removed from the day he quit to have contributed to an "aggravated situation." Also, as discussed above, the failures to promote were not the subject of a timely filing of a charge of discrimination. *See* fn. 8, *supra*.

**12.** "Under 29 U.S.C. § 623(a), age must be a determining factor before reaching the threshold of the *McDonnell Douglas* analysis. Having conceded that age was not a factor, the plaintiff cannot prove discrimination through either direct or indirect proof." *Skagen*, 910 F.2d at 1500.

at the *prima facie* level in the constructive discharge context. *Farr*, 762 F.Supp. at 817. Despite plaintiff's admissions regarding the reasons for the way Fuddruckers treated him, at the summary judgment stage, we will assume that a reasonable person would have felt compelled to resign faced with the economic situation in which Monaco was placed. Therefore, we can assume that Monaco was constructively discharged, based on his loss of benefits, wages and hours. Monaco has stated a *prima facie* case and the burden shifts to defendant.

### Burden Shifting

■ In response to plaintiff's *prima facie* case, defendant has articulated lawful, non-discriminatory reasons for its employment actions. Defendant maintains that the decisions to cut hours, wages and vacation were companywide decisions and that Mackiewicz had nothing to do with these decisions except the responsibility to enforce them. To support these claims Fuddruckers has submitted many documents and the affidavit of Charles Redepenning.[13] The legitimate reasons given by defendant for its actions, coupled with the supporting documentation, seem reasonable. We find the defendant has met its burden of offering legitimate reasons for its actions.

■ The burden then shifts back to plaintiff to demonstrate that these reasons are merely pretextual or that they are incredible. Plaintiff has clearly failed to meet this burden. Monaco does not even claim that the business reasons advanced by Fuddruckers are a pretext. Although he may not think he was treated fairly, "[e]vidence that an employee was treated unfairly is not as such sufficient to show pretext." *McCoy v. WGN Television*, 758 F.Supp. 1231, 1237 (N.D.Ill.1990). Similarly, Monaco has not attempted to show that defendant's proffered reasons are incredible, and we have found, as a matter of law, that they are not. "A party opposing summary judgment cannot rest on the pleadings and must affirmatively set forth facts that show that there is a genuine issue of material fact." *McCarthy*, 924 F.2d at 687.

The only evidence of discrimination from which we could possibly infer pretext are the age-based comments by Mackiewicz. But as seen above in the direct analysis, there is an insufficient causal link between these comments and the actions taken by defendant to show discrimination directly. Analogously, these comments are an inadequate showing of pretext. Monaco has failed to show that discriminatory reasons more likely than not motivated Fuddruckers, and has not demonstrated that the reasons proffered are incredible ones.

### CONCLUSION

There is no genuine issue of material fact, using direct evidence of discrimination, as to whether plaintiff was discriminated against in violation of the ADEA. Also, plaintiff has failed to raise a genuine issue sufficient to rebut defendant's proffered lawful reasons for its actions, and thus has not met its burden under the indirect method. Therefore, we grant defendant's motion for summary judgment.

---

**13.** Defendant has attached a copy of a beef study conducted by Fuddruckers, Inc. and dated November 25, 1987. In the affidavit of Redepenning, he states:

> As part of the Beef Study, in May, 1987, field tests were conducted using boxed beef instead of hanging in a number of Fuddruckers, Inc.'s restaurants ... The field tests revealed that, during the 27 week test period, butcher hours were reduced by 40% and that most of the stores in the survey reduced butchers from their regularly hourly rate with the expectation that the remainder would also do so ... The Beef Study included a projection of beef costs and beef processing costs for Fuddruck-

ers, Inc.'s restaurant in Houston, Texas, which included the projected savings of a 55% reduction in meat room labor hours and a reduction in butcher wages from $6.00/hr. to $3.50/hr ... I participated, as Vice President and General Counsel, in the decision of central corporate management for Fuddruckers, Inc., to commence the changeover from hanging forequarters of beef to boxed beef in all of its remaining restaurants, based upon the results of the beef study.

Defendant has also attached a copy of its vacation policy, effective June 1987, indicating that all hourly employees were entitled to only one week of vacation per year.