Ralph MONACO, Plaintiff–Appellant,

v.

FUDDRUCKERS, INC., Defendant–Appellee.

No. 92–2165.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1992.

Decided Aug. 13, 1993.

James B. Koch (argued), Gardiner, Koch & Hines, Chicago, IL, for plaintiff-appellant.

Keith A. Dorman (argued), Ross & Hardies, Chicago, IL, for defendant-appellee.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and GRANT, Senior District Judge.[1]

GRANT, Senior District Judge.

## I. BACKGROUND

Ralph Monaco was 38 years old in June 1985 when he began working for Fuddruckers, Inc., a national restaurant chain. As a "skilled butcher," he was one of Fuddruckers' top-paid hourly employees, with a starting wage of $6.00 an hour. That Monaco performed his job to the satisfaction of his employer throughout his tenure is evidenced by numerous performance evaluations, regular wage increases and increased supervisory responsibilities. By June 1986 Monaco was earning $8.00 an hour and his job responsibilities had expanded to include the training and scheduling of other butchers.

In early 1987, Monaco became interested in becoming a shift supervisor. He asked an assistant manager, Marc Mackiewicz, and even a district manager about the job on "several occasions," but never got around to filing an application or asking the one person who had the authority to promote him to shift supervisor, Thomas Hlady, the restaurant's general manager. In February and March 1987, Hlady promoted two other employees to shift supervisor, Mary Dwyer and Kirby Dorsey. When Monaco asked Mackiewicz why he had not been promoted over Dwyer, Mackiewicz allegedly told him he was getting too old. When he asked about the Dorsey promotion, Mackiewicz made no response.

Things went steadily downhill for Monaco from that point. In June 1987, Fuddruckers changed its vacation policy reducing the number of weeks its hourly employees could take from two to one. In December 1987, central corporate management decided that it was economically more feasible for its restaurants to use boxed beef in place of hanging forequarters thus eliminating the need

for skilled butchers.[2] Fuddruckers' Vice President and General Counsel, Charles Redepenning, Jr., accordingly issued a directive to all district managers to reduce the wages and hours for their skilled butchers. As an hourly employee and skilled butcher, Monaco suffered the adverse consequences of Fuddruckers' actions.

When Monaco was subsequently asked by Mackiewicz to train a younger hourly employee, Tom Bertram, he objected and questioned Mackiewicz' reasons. Mackiewicz allegedly responded by telling Monaco he was getting too old and suggested that he quit.

Things came to a head on February 19, 1988, when Monaco demanded a second week of vacation. Mackiewicz, now general manager, told Monaco he was no longer entitled to a second week and allegedly said "you're getting kind of old, why don't you quit." When Monaco returned to work three days later, he reiterated his demand for additional time off. Mackiewicz once again refused, and Monaco walked off the job.

On June 21, 1988, Monaco filed a charge of discrimination with the Illinois Department of Human Rights (IDHR) alleging that he was constructively discharged as a result of the loss in wages, hours and vacation time in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623. What disposition IDHR may have made of his claim is unknown.

On December 7, 1989, Monaco filed suit in federal district court alleging among other things that Fuddruckers had discriminated against him because of his age when it constructively forced him to resign his position and replaced him with a younger employee. Monaco amended his complaint to include more detailed factual allegations on January 24, 1990, and, on August 22, 1991, Fuddruckers moved for summary judgment. The dis-

---

1. The Honorable Robert A. Grant, Senior District Judge, United States District Court for the Northern District of Indiana, is sitting by designation.

2. The decision was made on the basis of a Beef Study conducted by Fuddruckers' Purchasing Department in response to a decrease in the availability of forequarters of hanging beef in the meat processing industry. The Study was dated November 25, 1987.

trict court, Judge Moran, granted the motion and this appeal followed.

## II.  DISCUSSION

Our review is, of course, *de novo. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Crady v. Liberty National Bank and Trust Co. of Indiana*, 993 F.2d 132, 134 (7th Cir. 1993).  Like the district court, we have reviewed the record in its entirety, drawing all *reasonable* inferences in the light which was most favorable to Monaco, the non-moving party, and have concluded that a rational trier of fact could not have found for Monaco on his claim of age discrimination.

■  To establish an ADEA violation, Monaco must be able to demonstrate that he suffered a materially adverse change in the terms or conditions of his employment *because of his age.  Crady*, 993 F.2d at 134; *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 885 (7th Cir.1989).  He may do so under either the direct method set out in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1794–95, 104 L.Ed.2d 268 (1989), or the indirect burden-shifting method described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) and *Hazen Paper Co. v. Biggins*, —— U.S. ——, ——, 113 S.Ct. 1701, 1708, 123 L.Ed.2d 338 (1993).  Monaco attempted both, and satisfied neither.

### A.  The Direct Method

■  The only direct evidence of age discrimination offered by Monaco were the age-related remarks allegedly made by Marc Mackiewicz between February 1987 and February 1988.  The district court found that Monaco failed to show a sufficient causal connection between those remarks and the

actions taken by Fuddruckers.  *Monaco v. Fuddruckers, Inc.*, 789 F.Supp. 944, 948–50 (N.D.Ill.1992).  We agree.  "Unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of a discriminatory discharge."  *McCarthy v. Kemper Life Ins. Companies*, 924 F.2d 683, 686–87 (7th Cir. 1991).  Monaco did not attempt to connect Mackiewicz' remarks to the reductions in wages, hours and vacation time, nor could he.  The record clearly shows that those decisions were made by Fuddruckers' central corporate management and that they applied to *all* of its "skilled butchers" and/or hourly employees.

Whether Monaco could prove a discriminatory failure to promote based on Mackiewicz' remarks is an issue we need not decide.  The administrative charge which Monaco filed on June 21, 1988 made no reference to a failure to promote, and the allegations contained in the charge cannot reasonably be read to encompass such a claim.[3]  Under the circumstances, Monaco was barred from raising any claim premised on a failure to promote in his complaint.  *See Weiss v. Coca–Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993); *O'Rourke v. Continental Casualty Co.*, 983 F.2d 94, 97–98 (7th Cir.1993); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir.1985); *Jenkins v. Blue Cross Mutual Hospital Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Monaco*, 789 F.Supp. at 949 n. 8.

### B.  The Indirect Method

■  Monaco fares no better under the indirect method.  To establish a prima facie case of discriminatory discharge under the indirect method of proof, Monaco must show that: 1) he was more than forty years old; 2) he performed his job satisfactorily; 3) he was discharged (either actually or constructively); and 4) the discharge occurred under circum-

---

**3.**  While Monaco made a general reference to a "loss of benefits" in his administrative charge, the only benefit which he specifically identified, and allegedly lost, was vacation time.  He alleged a failure to promote and miscellaneous and sundry other grievances for the first time in his amended complaint, all of which are time barred.

stances which gave rise to an inference of age discrimination. *Stetson v. NYNEX Service Co.*, 995 F.2d 355, 359–60 (2d Cir.1993). *See also Crady*, 993 F.2d at 134; *Konowitz v. Schnadig Corp.*, 965 F.2d 230, 232 (7th Cir. 1992). That Monaco satisfies the first two steps is undisputed. He was 41 when he quit his job, and all performance evaluations through December 1986 showed that his work was consistently satisfactory. Although Fuddruckers disagrees, the district court also was willing to assume that Monaco had satisfied the third.[4] Monaco's stumbling block is at step four.

■ Monaco contends that he was forced to resign due to the "economic hardship" imposed upon him by the reduction in his wages, hours, and other benefits.[5] He contends that it is reasonable to infer from the comments made by Mackiewicz and from the fact that he was replaced by a younger man that the changes in his working conditions were motivated by his age. While the district court found Mackiewicz' statements insufficient evidence of discrimination, it was willing to assume for the sake of argument that Monaco had indeed been replaced by a younger individual and that he had therefore presented a prima facie case of discrimination.[6] The burden therefore shifted to Fuddruckers to present legitimate non-discriminatory reasons for its actions. Judge Moran found that it met that burden when it produced evidence showing that the wage, hour and vacation cuts were all made by upper level corporate management, not at the local level, and for business reasons unrelated to the age of its employees. Having successfully rebutted any presumption of discrimination, the burden shifted back to Monaco to show that Fuddruckers' stated reasons were really a pretext for the employment action. *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 847 (7th Cir.1992). The district court found that Monaco "ha[d] clearly failed to meet this burden." *Monaco*, 789 F.Supp. at 952. We agree.

While there are numerous ways to prove pretext, *see Gustovich*, 972 F.2d at 848–49; *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1414–15 (7th Cir.1984), Monaco simply relied on the evidence he used to establish his prima facie case, i.e., the fact that Mackiewicz made ageist remarks and that he was replaced by a younger individual. This he may not do. *La Montagne*, 750 F.2d at 1414.

> [The mere fact that the employer may have hired a younger replacement is] too insubstantial to support an inference of age discrimination. It is not a violation of the Act to replace an employee in the protected class with a younger person, as long as the protected employee is not replaced because of his age. Because younger people often succeed to the jobs of older people for perfectly legitimate reasons, the mere fact that an older employee is replaced by a younger one does not permit an inference that the replacement was motivated by age discrimination.

*Id.* at 1412–13. While there were as many as three butchers working at Fuddruckers'

---

4. To prove a constructive discharge, Monaco must show that Fuddruckers deliberately made his "working conditions so onerous or demeaning that he [w]as effectively . . . fired in place and compelled to leave." *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 314 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987); *see also Henn v. National Geographic Society*, 819 F.2d 824, 826, 829 (7th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987). The district court assumed for the sake of argument that Monaco met that burden.

5. Although Monaco now contends that "loss of benefits" included loss of vacation time, loss of medical insurance and loss of a promotion, the only "benefit" mentioned in his administrative charge was the loss of vacation.

6. The district court inferred from the mere fact that Bertram had been trained to work in the butcher shop and was doing so on Monaco's days off that he was the one who replaced Monaco when he quit. The court thus concluded that Monaco had satisfied the fourth element of a prima facie case by showing that Fuddruckers sought a younger replacement. The reasonableness of such an inference is subject to some speculation. While it was a seemingly easy matter to prove, there is nothing in the record which tells us whom Fuddruckers actually hired to replace Monaco, or what that person's age was.

Matteson, Illinois restaurant at one point, by January 1988 the number had diminished to one, Monaco. The record shows that Bertram was trained as a back-up for Monaco on his day off, and that he only worked in the butcher shop when Monaco was not there. The job Bertram performed therefore had no impact on the number of hours Monaco worked, the wage he was paid, his title or his job responsibilities.[7]

There is no evidence whatsoever to suggest that Fuddruckers intended to fire Monaco if he had not quit, that Bertram was hired to, or did in fact, replace him when he quit, or that similarly situated younger employees were treated more favorably than Monaco with respect to wages, hours, vacation or any other benefit Fuddruckers may have provided. To the extent Monaco relies on the remarks made by Mackiewicz to fill the gap, his reliance is misplaced. As previously discussed, those remarks standing alone were insufficient as a matter of law to support an inference of age discrimination. *See McCarthy,* 924 F.2d at 686–87; *Smith v. Firestone Tire and Rubber Co.,* 875 F.2d 1325, 1330 (7th Cir.1989); *La Montagne,* 750 F.2d at 1412.

### III. CONCLUSION

For the foregoing reasons, we now AFFIRM the judgment of the district court.

---

7. Under the circumstances, we would be hard-pressed to find that Fuddruckers' decision was in any way "materially adverse" to Monaco. *See Crady v. Liberty Nat'l Bank and Trust Co. of Indiana,* 993 F.2d 132, 136 (7th Cir.1993) (materially adverse change may be indicated by termination of employment, demotion, less distinguished title, material loss of benefits, or significantly diminished material responsibilities).