**Ron G. McCOY, Plaintiff,**

v.

**WGN TELEVISION, A DIVISION OF WGN CONTINENTAL BROADCASTING COMPANY, a subsidiary of Tribune Broadcasting Company, Defendant.**

No. 89 C 4368.

United States District Court,
N.D. Illinois, E.D.

Oct. 23, 1990.

Peter R. Meyers, Therese E. Zallar, Meyers & Meyers, Chicago, Ill., for plaintiff.

John W. Powers, Brenda H. Fels, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ron G. McCoy ("McCoy") has filed a Complaint against his ex-employer WGN Television ("WGN"),[1] asserting violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634. McCoy makes three claims:

1.  WGN transferred him to a different position within its organization on account of his age.[2]

2.  WGN later terminated his employment in retaliation for his filing a claim of age discrimination.

3.  WGN also (or alternatively) discharged him on the basis of his age. WGN now moves under Fed.R.Civ.P. ("Rule") 56 for summary judgment on all three claims. For the reasons stated in this memorandum opinion and order, WGN's motion is granted in its entirety.

### Facts [3]

In the summer of 1983, while working as the Promotional Manager for KTVT in Dallas/Ft. Worth, McCoy (then 41 years old) was approached about employment at WGN by James Ellis ("Ellis"), Vice President of Creative Services for WGN's parent company referred to in n. 1. On October 17, 1983 WGN's General Manager Joe Loughlin ("Loughlin") hired McCoy as the TV Station's Director of Creative Services. McCoy replaced a younger incumbent and was told (McCoy Dep. 38) that the "position just needed a fresh look" and that the Creative Services "staff was not working at their full potential" (*id.*). McCoy was "[r]esponsible for enhancing station image and on-air look through the use of outdoor, transit, print and radio advertising as well as on-air promotion and public relations" (*id.* Ex. 4).

While some evidence indicates that McCoy performed well in some areas of his job, by March 1987 it was clear that his supervisor, Loughlin, was not satisfied with his overall performance. At that time Loughlin told McCoy that he was contemplating replacing McCoy with someone else because "he and I weren't on the same

---

1.  More precisely, McCoy's target is WGN Continental Broadcasting Company, of which WGN Television is a division and hence not a suable legal entity. McCoy's Complaint describes that accurately, correctly naming the corporation as defendant (though the Complaint also gratuitously identifies the corporation as a wholly-owned subsidiary of Tribune Broadcasting Company).

2.  McCoy was 45 at the time of his transfer and 46 at the time he was later terminated.

3.  Rule 56 imposes on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). For that purpose this Court is called upon to draw all "reasonable inferences, not every conceivable inference" in the light most favorable to the nonmovant—in this case McCoy (*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987)).

wavelength" (*id.* 83). McCoy also stated in his deposition that Loughlin had exhibited some dissatisfaction with two incidents in McCoy's department (*id.* 85–86).[4]

Ellis also confirmed that McCoy's performance was not optimal, but he thought it possible that the workload in McCoy's department was too great for him to handle. Ellis reviewed the performance of McCoy and his department and observed that McCoy's greater talents lay in dealing with people. Ellis reported those observations first to Loughlin and then to Loughlin's successor as Station Manager, Dennis FitzSimons ("FitzSimons").

During McCoy's tenure as Director of Creative Services, his department received several awards. However, he acknowledged that none of the awards was given for his individual work—instead they were for work primarily performed by an outside advertising agency. McCoy also received a letter from an outside consulting agency both commending and criticizing a promotional cassette prepared by McCoy's department.

WGN–TV's Controller John J. Vitanovec ("Vitanovec") stated that McCoy's pay increases in 1984 and 1985 were "no higher" than those of other comparable employees. In 1986 McCoy's salary increase and bonus were smaller than comparable management employees at WGN. In 1987 McCoy "was the only management employee who did not receive a salary increase or a bonus" (Vitanovec Aff. 1–2).

Throughout 1986 and 1987 WGN–TV experienced serious financial difficulties and declining revenues. WGN offered evidence that due both to its financial situation and to its evaluation of McCoy's performance, in June 1987 FitzSimons carried out a plan initiated by his predecessor, Loughlin, to hire an additional person to take on some of McCoy's responsibilities. Then, following a concept that had been utilized in two other WGN-owned television stations, FitzSimons restructured McCoy's job into two positions: Director of Creative Services and Director of Promotions and Publicity.

FitzSimons then hired Pam Pearson ("Pearson"), age 30, who was experienced in the field,[5] to take over the duties of Director of Creative Services, while he transferred McCoy to the newly-created position of Director of Promotions and Publicity. McCoy's new responsibilities included "enhancing station image in the community through the use of community activities, public relations and the local press" (McCoy Dep. Ex. 5). His salary and benefits in the new position remained the same. FitzSimons told McCoy (*id.* 92) that he "hoped to make it a full-time position but he wasn't sure because of" WGN's financial problems (*id.* 92–93):

> So, he couldn't guarantee that this job would last. He couldn't guarantee how long the job would last, but he had hoped it would be a permanent position.

FitzSimons also told McCoy (FitzSimons Dep. 66) that although "it was highly unusual ... [to] add another position" during a financially slow period, the station was giving McCoy the chance to justify its inclusion in the budget by proving that the new position "would contribute to the success of the station."

WGN uses the statements of Ellis and FitzSimons to show that the decision to transfer McCoy was motivated not only by

---

**4.** McCoy states at page 4 of his affidavit (filed in his Statement of Additional Facts That Require Denial of Defendant's Motion for Summary Judgment) that he "never received any criticism" from anyone at WGN. And the same affidavit contains other similar exculpatory disclaimers, obviously intended to cast doubt on facts advanced by WGN in support of its motion. But in each instance those disclaimers plainly contradict McCoy's own prior deposition. *Diliberti v. United States,* 817 F.2d 1259, 1263 (7th Cir.1987) (citations omitted) is one of many cases rejecting that kind of effort:

> It is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior depositions or otherwise sworn testimony.

In all events, as the ensuing discussion reflects, McCoy is not saved from an adverse judgment by his efforts.

**5.** Loughlin had recruited Pearson from KWGN–TV, Denver, where she was the Creative Services Director. Pearson had ten years of experience before her arrival at WGN. She has been the recipient of six awards for her performance.

McCoy's unsatisfactory performance but also by WGN's desire to restructure McCoy's job to get better quality output from him. And as the recital to this point has shown, WGN's financial difficulties played a significant part in the decision as well.

Those ongoing financial difficulties quickly led to a more Draconian decision, reached in early September 1987, to make substantial personnel cuts. In January 1988 WGN eliminated approximately 40 positions, including the entire Department of Community Affairs and McCoy's position. Only two employees in the Community Affairs Department were retained and transferred to other positions, and they were respectively aged 56 and 61.

It is undisputed that McCoy knew that he would be discharged and his position eliminated as early as September 1987, when FitzSimons told McCoy that due to financial constraints the position would not be continued past the current year. In that same month FitzSimons offered to assist McCoy in finding other work. During the months of October and November 1987 McCoy did seek other employment. Indeed, although McCoy was not told directly by his supervisor FitzSimons about his pending discharge until September, he claims that Tom Leach of WGN's accounting department told him in July 1987 that his new job was not in the budget for 1988. McCoy further opines (McCoy Aff. 3) that "WGN never planned to budget that new position."

As for McCoy's short tenure as the Director of Promotions and Publicity, WGN offered evidence through the statements of FitzSimons and Ellis that McCoy's performance in that post did not meet WGN's expectations. In rebuttal McCoy states that he was not made aware of WGN's impressions of his performance and that, contrary to WGN's statements, he had prepared several proposals, plans and strategies in his new job.

Knowing that WGN was not planning to continue his position or his employment into 1988, McCoy filed a charge of age discrimination on November 23, 1987 with the Illinois Department of Human Rights ("IDHR") and at the Equal Employment Opportunity Commission ("EEOC"). On January 11, 1988 FitzSimons confirmed to McCoy that his job would not be in the 1988 budget due to WGN's financial situation. At that time FitzSimons told McCoy that he could stay until the end of January 1988. When he was informed of the termination of his employment McCoy replied that he "wasn't surprised" (McCoy Dep. 110). He believed (*id.* 111) that the information about the termination of the job position that FitzSimons have given him in September was still valid. On January 22, 1988 McCoy was discharged. McCoy admitted that throughout his employment at WGN his age was never discussed by any members of management.

After McCoy's discharge his prior responsibilities were divided among other employees. Those responsibilities that did not revert back to the Creative Services Department were performed by an outside consultant who was then 55 years old. Some few of the functions that had previously been performed by the eliminated Departments of Community Affairs and Promotions and Publicity began to be performed by a new employee, age 29. Although McCoy's work was parceled out in that way, McCoy's position was eliminated and was not restaffed.

On February 2, 1988 McCoy added a retaliation count to his complaint before IDHR and EEOC. On May 30, 1989 he filed this timely action.

### *McCoy's Transfer*

■ McCoy's first claim is that he was involuntarily transferred from his job as Director of Creative Services to the position of Director of Promotions and Publicity on the basis of his age. McCoy can avoid summary judgment on that count in one of two ways:

1. by demonstrating the existence of a genuine issue of material fact by presenting direct evidence that his age motivated WGN's decision to transfer him, or

2. absent such direct evidence, by showing such a material fact issue at any stage of the familiar ping-pong approach dictated by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), rearticulated in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).[6]

McCoy offers no direct evidence that even suggests his age was a factor in his transfer. Indeed, there is no evidence that McCoy's age was ever discussed by WGN's management. Accordingly, McCoy attempts to avoid summary judgment by using the *McDonnell Douglas* indirect method of proof.[7] In that process McCoy must first establish a prima facie case by showing [8] that (*Weihaupt v. American Medical Association,* 874 F.2d 419, 427 (7th Cir. 1989) (citations and footnote omitted)):

> (1) he was in the protected class (age 40 or older); (2) his job performance met his employer's legitimate expectations; (3) he was discharged or demoted; and (4) the employer sought a replacement for him.

WGN admits that the first and fourth elements are present but takes issue with both the second and third, claiming that McCoy was not performing well in his position as Director of Creative Services and that his transfer was not a materially adverse change in his employment.

As for the second element, McCoy has the burden of showing that he was performing according to his employer's legitimate expectations (*Oxman v. WLS–TV,* 846 F.2d 448, 452 & n. 2 (7th Cir.1988)). There is no question that McCoy performed a portion of his job well: His department received several awards during his tenure and one outside consulting firm commended the department's work. Although McCoy did not show how those commendations reflected directly on his personal performance, he does offer enough evidence to warrant the inference that his performance in *some* aspects of his job was satisfactory. Even so, McCoy admits that his supervisor, Loughlin, was not satisfied with his *overall* performance.

McCoy also points to his having received bonuses and pay raises during his tenure as Director of Creative Services. But that is less than half the story—WGN's uncontroverted evidence is that McCoy's raises and bonuses were declining in relationship to those of other persons in management positions. If anything, McCoy's own evidence indicates that his performance was declining in comparison to that of other management personnel. Again, as with the evidence of awards, evidence of McCoy's salary increases and bonuses does not shake WGN's basic assertion that his performance was not entirely satisfactory. Thus, as to the second prong described in *Weihaupt,* McCoy has failed to put forward a prima facie case of discrimination.

---

**6.** Although this Court has chosen to go through all of the steps of the *McDonnell Douglas–Burdine* analysis, it notes that it is not necessary to decide whether the nonmovant has met his burden of establishing a prima facie case where he cannot meet his burden of showing pretext, the third stage of the analysis (*Holmberg v. Baxter Healthcare Corp.,* 901 F.2d 1387, 1391 (7th Cir.1990), citing *Box v. A & P Tea Co.,* 772 F.2d 1372, 1378 (7th Cir.1985)).

**7.** Where (as here) a plaintiff offers no direct or circumstantial evidence that age was a determining factor in the discharge, he or she must turn to the indirect, burden-of-production-shifting method of proof originally established for Title VII cases in *McDonnell Douglas* and later adapted to ADEA claims (*Ayala v. Mayfair Mold-*

*ed Products Corp.,* 831 F.2d 1314, 1318 (7th Cir.1987)).

**8.** This opinion will refer to what an ADEA plaintiff such as McCoy must "prove" or "show," because that is the form in which the controlling cases address the requirements. It should, however, be emphasized that in the present context—involving opposition to a summary judgment motion—all McCoy must do is to advance evidence that (with reasonable inferences in his favor) creates a material factual issue, rather than to prove his case by a preponderance of the evidence. Though this opinion often uses the shorter locution of "proof" or "showing" to avoid the constant awkward repetition of the lengthier "raise a genuine issue of material fact" phraseology, this Court has throughout applied the proper Rule 56 standard.

WGN also urges that McCoy failed to satisfy the third prong of the prima facie case either: that he was demoted. In that respect McCoy must show that the transfer was a *"materially adverse* change in the terms or conditions of [his] employment because of [his] employer's discriminatory conduct" (*Spring v. Sheboygan Area School District,* 865 F.2d 883, 885 (7th Cir.1989) (emphasis in original)). *Spring, id.* said:

> The ADEA outlaws discrimination in the workplace on the basis of age, *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111 [105 S.Ct. 613, 83 L.Ed.2d 523] (1985), not changes in duties or working conditions that cause no materially significant disadvantage to an older employee. As one district court aptly put it, "the [ADEA] is not intended to prevent employers from changing the job responsibilities of their 40 to [70] year old employees. Neither is the Act intended to give 40 to [70] year old employees the right to walk out and sue their employer because they dislike their changed job responsibilities." *Frazer v. KFC National Management Co.,* 491 F.Supp. 1099, 1105 (M.D.Ga.1980).

Simply to state the requirement is to expose McCoy's failure. He has not shown how the restructuring of his former job into two positions was a materially adverse change (save perhaps for his later discharge, a subject discussed farther on in this opinion). His pay and benefits remained the same in the new position. Nor has it been demonstrated that the transfer was a demotion or that it was adverse in any way. Thus, McCoy has failed to satisfy this prong of the prima facie case too.

But even if McCoy's evidence *had* made out a prima facie case (as it has not), *Oxman,* 846 F.2d at 453 (citations omitted, emphasis in original) tells us:

> Satisfaction of these elements creates a rebuttable presumption of discrimination and shifts the burden of *production* to the defendant to articulate lawful reasons for the plaintiff's discharge. Once the defendant articulates a nondiscriminatory, legitimate reason for its actions, the presumption of discrimination dissolves and the burden shifts back to the plaintiff to prove that the defendant's proffered reasons are pretextual. The plaintiff can do so by showing either that a discriminatory reason more likely than not motivated the employer or that the employer's proffered explanation is incredible.

Here WGN produced evidence that its decision to transfer McCoy was based primarily on his unsatisfactory performance, while the rest of the reason was to take maximum advantage of the skills he *had* exhibited. WGN's consultant had recommended that McCoy's job be restructured to reduce the workload and to allow McCoy to improve his performance. McCoy's affidavit statement that FitzSimons did not criticize his performance at the time he told him of the transfer leaves unimpaired McCoy's earlier testimonial admission that FitzSimons' predecessor, Loughlin, was not entirely satisfied with his performance and had told McCoy that he might be fired.

In short, WGN's reasons for restructuring McCoy's position into two jobs still remain unrebutted. McCoy disputes WGN's assessment of his performance but does not offer a shred of evidence to raise an inference that the restructuring was not made in good faith or that it was done as a pretext for age discrimination—that the decisionmaker had the discriminatory motive necessary for liability under the ADEA.

*Oxman,* 846 F.2d at 452 teaches that the plaintiff's ultimate burden in an age discrimination case is to prove that the adverse action by the employer was made because of the plaintiff's age. That does not call for proof "that age was the sole factor motivating the employer's decision, only that age was a determining factor in the sense that [the adverse action would not have been taken] but for the employer's motive to discriminate on the basis of age" (*id.*)

Nothing here even hints at that. While McCoy's replacement (if in fact a new employee who takes over half of a person's job may be labeled a "replacement") was younger (age 30), *LaMontagne v. Ameri-*

*can Convenience Products, Inc.*, 750 F.2d 1405, 1413 (7th Cir.1984) explains why that alone does not meet McCoy's burden:

> It is not a violation of the Act to replace an employee in the protected class with a younger person, as long as the protected employee is not replaced because of his age. Because younger people often succeed to the jobs of older people for perfectly legitimate reasons, the mere fact that an older employee is replaced by a younger one does not permit an inference that the replacement was motivated by age discrimination.

It must always be remembered that the *propriety* of WGN's employment decision is not an issue. Evidence that an employee was treated unfairly is not as such sufficient to show pretext (*Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.1980) (Judge Decker's opinion below, aff'd per curiam)). Cases such as *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988) (citations omitted) define the judicial function in this class of cases:

> [W]e do "not·sit as a super-personnel department that reexamines an entity's business decisions." "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere." Rather, our inquiry is limited to "whether the employer gave an honest explanation of its behavior."

McCoy has expended the whole of his energies in trying to show that WGN's decision to terminate him was wrong in light of its evaluations of his past performance. But even if that were true (and any objective view of what has been proffered makes that a problematic assumption at best), this Court cannot grant relief for errors in business judgment. Even if, as McCoy would have it, WGN transferred him as a part of a two-stage firing, the transfer itself is not evidence of age discrimination unless the "ultimate dismissal itself" was discriminatory (*Holmberg*, 901 F.2d at 1391).

In sum, McCoy has failed to satisfy the second prong of his prima facie case (that he was satisfactorily performing his job before his transfer), and even if he had overcome that hurdle he has still failed to rebut WGN's proof of a business reason for its action.[9] In addition, he failed to show under the third prong that his transfer affected him in a materially adverse way. Accordingly, both because of McCoy's failure to make a prima facie case of age discrimination and because even if he had done so he has nonetheless failed to call into question WGN's reasons for his transfer, McCoy's first claim is dismissed.

### *Retaliation*

■ McCoy's second claim is that WGN retaliated against him by terminating his employment because he had filed an age discrimination complaint. Once again McCoy has failed to offer any direct evidence of discrimination. Furthermore, he has not established the necessary elements of the prima facie case under the indirect proof method. To show retaliation, McCoy must offer evidence that (*Jennings v. Tinley Park Community Consolidated School District No. 146*, 796 F.2d 962, 966–67 (7th Cir.1986) (citations omitted), adapted to this case):

> (1) [he] engaged in statutorily protected expression;
>
> (2) [he] suffered an adverse action by [his] employer; and (3) that there is a casual link between the protected expression and the adverse action.

See also *Kristufek v. Hussman Foodservice Co.*, 1989 WL 8529, 1989 U.S.Dist. LEXIS 952, at 4 (N.D.Ill.), applying the same test in an ADEA case.

> Again, because that response is surely more than plausible, McCoy still would have to show something to support the inference that WGN's decision to do so was based on McCoy's age rather than on WGN's own perceived business needs. McCoy has not done so.

---

**9.** If Ellis' conclusion that McCoy's workload was too much for him is correct, then it is possible that WGN's expectations were not reasonable. But even though McCoy insists that his performance was good, WGN's response to a perceived overload of McCoy's job was to split it in two.

Here McCoy has gotten past the first two of those hurdles but has fallen at the third: There is plainly no causal link between his protected act of filing a claim and WGN's decision to discharge him. It is undisputed that McCoy's supervisor, FitzSimons, told McCoy about WGN's decision to discharge him at least two months *before* he filed his discrimination claim. Even more, McCoy even asserts that WGN had planned to discharge him from the time of his transfer, which took place about *four* months before that filing.

In a vain effort to counter those facts, McCoy makes his arguments as if the date in issue were his actual date of discharge. That is clearly wrong. As *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (emphasis in original) said, the time of a violation is the *"discriminatory act,* not the point at which the *consequences* of the act become painful." [10] *Kuemmerlein v. Board of Education of the Madison Metropolitan School District,* 894 F.2d 257, 260 (7th Cir.1990) explains:

Plaintiff's actual termination only made painful the consequences of the discriminatory act: the allegedly illegal act was the layoff decision itself.... [A] plaintiff's cause of action for employment discrimination stemming from a layoff decision runs from the time of notice, not from the time of actual termination.

Thus, for example, *Stephenson v. Martin Marietta, Inc.,* 1988 WL 75736, 1988 U.S.Dist. LEXIS 11170, at 11 (D.Md.) held that when notice of an impending discharge had preceded the filing of an age discrimination claim, by definition the later termination of employment could not be retaliatory. Like the plaintiff in *Stephehson,* McCoy blinds himself to the self-evident fact that a decision made by an employer cannot be caused by the employee's act of filing a discrimination claim when that fil-

ing has not yet taken place. McCoy's claim of retaliation is also dismissed.

### McCoy's Discharge

█ McCoy's final claim is that he was discharged on the basis of his age. WGN presented evidence that it discharged McCoy and others during a reduction-in-force ("RIF"). Under such circumstances the prima facie case is somewhat different than that in a simple discharge case. *Oxman,* 846 F.2d at 455 says that the plaintiff in a RIF case:

can establish a prima facie case by showing that he was within the protected age group, that he was performing according to his employer's legitimate expectations, that he was terminated, and that others not in the protected class were treated more favorably.

There is no dispute that McCoy was in the protected age group or that he was terminated. But WGN has presented evidence that McCoy was not performing up to its expectations and that his deficiencies, combined with the financial problems of the station, formed the basis for McCoy's inclusion in the RIF in January 1988. In rebuttal McCoy states (McCoy Aff. at 6) that he was never told of WGN's dissatisfaction with his performance in his job and that, contrary to WGN's statements, he had prepared several proposals, plans and strategies in his new job. However, those statements neither offer any positive evidence of satisfactory performance nor serve to rebut WGN's evidence of McCoy's inadequate performance during the period in question. In light of McCoy's failure to offer any evidence of his performance during his final position at WGN, he has failed to present a prima facie case on that score.[11]

█ But even were McCoy to be viewed as having overcome the need to present a prima facie case, WGN has once again sat-

---

**10.** *Heiar v. Crawford County, Wis.,* 746 F.2d 1190, 1194 (7th Cir.1984) has held the *Chardon* rule applies to ADEA cases.

**11.** McCoy also failed to show how others not in the protected class were treated more favorably than he was. This opinion does not rest on that

factor, however, because it might be said that WGN's retention of Pearson and its later hiring of a new employee who took on some of McCoy's former responsibilities satisfies the more-favorable-treatment requirement.

isfied the second step of the *McDonnell Douglas-Burdine* sequence by articulating a legitimate reason for McCoy's termination. WGN's burden is simply one of production (see *LaMontagne*, 750 F.2d at 1409), and WGN plainly satisfies it with its evidence that McCoy was terminated due to his unsatisfactory performance and due to the financial situation of WGN.

As before, then, McCoy can avoid summary judgment only by showing that WGN's stated legitimate reasons for terminating him are a mere pretext for age discrimination. And as the earlier quotation from *Oxman*, 846 F.2d at 453 teaches, McCoy can show such pretext in two ways—by demonstrating "either that a discriminatory reason more likely than not motivated the employer or that the employer's proffered explanation is incredible." But he unquestionably falls short on both levels.

As to the first, the facts that McCoy was not told of his unacceptable performance or that he had submitted various reports are not enough—even buttressed by favorable inferences—to create such an issue as whether WGN harbored a discriminatory motive in terminating McCoy. To show an improper motive, McCoy also states that FitzSimons was leading a "youth movement" at WGN and that Loughlin was forced to resign presumably because of age. Those bare assertions are not enough, for McCoy is unable to ground them in any evidence. *Skagen v. Sears, Roebuck & Co.*, 910 F.2d 1498, 1500 (7th Cir.1990) applies the mandate of Rule 56(e) in the employment discrimination context:

When a motion is made for summary judgment in a case, an adverse party may not rest upon mere allegations or denials of the adverse party's pleadings but the adverse party's response must set forth specific facts showing that there is a genuine issue for trial.

That leaves only the possibility of showing that WGN's proffered reasons for the termination are unworthy of belief. *LaMontagne*, 750 F.2d at 1414–15 explains that McCoy can do that by demonstrating one of three things:

1. WGN's reasons have no basis in fact.

2. If they do have a basis in fact, they were not really factors motivating the discharge.

3. Even if there were such factors, they were jointly insufficient to motivate the discharge.[12]

First, WGN's reasons clearly have a basis in fact: McCoy does not deny the existence of the occurrences that led to both his transfer and his termination, except that he was not informed of his unsatisfactory performance. That then leads to consideration of the second and third points.

In both those respects, McCoy has done little more than to offer his own statements that he performed well and to claim that the reason for his termination must therefore be illegitimate. Although his own view might perhaps surmount the lower prima facie hurdle, *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464–65 (7th Cir. 1986) (adapted to this case) makes it plain that at the third-step pretext stage:

[McCoy] must do more than challenge the judgment of his superiors through his own self-interested assertions. "[The employee's] perception of himself, however, is not relevant. It is the perception of the decision maker which is relevant." *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980).

---

**12.** As stated, that third factor has the sound of a possible second-guessing of the employer on the merits of an employment decision. That of course is impermissible—as this Court put it in *Zick v. Verson Allsteel Press Co.*, 644 F.Supp. 906, 913 (N.D.Ill.1986), *aff'd mem.*, 819 F.2d 1143 (7th Cir.1987):

ADEA is about age discrimination, not shabby or numbskull employment practices.

Fairly understood, the third *LaMontagne* alternative really amounts instead to requiring an evaluation that the factors advanced by the employer as its reasons for termination were so patently untrue—in *Oxman* terms, "incredible" —as to lead to the conclusion that they simply masked a decision that was really fueled by a ADEA-violative consideration. Again relatedly, this is not a case in which McCoy has shown that his age was even a partially motivating factor so as to require the "mixed motive" analysis of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

McCoy has presented nothing objective in support of his position, such as evidence that the proffered reason was so far removed in time that it is unlikely to have been the whole cause, or that the reason applied with equal or greater force to another employee who was not discharged—examples of the type of evidence that would be relevant to prove that the items of inadequate performance were insufficient to motivate McCoy's discharge (*LaMontagne*, 750 F.2d at 1415). Nor has McCoy offered the testimony of co-workers or performance evaluations to refute WGN's documented reasons for his termination.

By contrast, WGN has proffered more than its own self-serving assertions: It has submitted objective indirect evidence that it had not used age as a factor in its RIF. In fact, the only remaining members of the department disbanded by the RIF were employees over 40 years of age. Furthermore, without any evidence of age discrimination, the fact that WGN discharged McCoy while retaining Pearson is not by itself proof of discrimination. As this Court said in *Zick*, 644 F.Supp. at 913 (adapted to this case):

> But absent evidence of age discrimination—of which [McCoy] has shown none here—an employee cannot point the finger at another and say "that one should have been fired, not I."

There is thus no reasonable predicate for drawing the inference that any age discrimination was at work in WGN's decision to include McCoy in the RIF. McCoy's third claim is also dismissed.

### Conclusion

There is no genuine issue of material fact as to any of McCoy's three claims, and WGN is entitled to a judgment on each as a matter of law. This action is dismissed in its entirety.