In re Robert A. HOBBS, Debtor.

Robert A. HOBBS, Plaintiff,

v.

Monica C.P. HOBBS, Defendant.

Bankruptcy No. 94–32564.
Adversary No. 95–3228.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

May 29, 1996.

H. Buswell Roberts, Toledo, Ohio, for Plaintiff.

John Kissh, Hancock County Dept. of Human Services, Child Support Enforcement, Findlay, Ohio, for Defendant.

## OPINION AND ORDER DENYING COMPLAINT TO DISCHARGE DEBT AND EXCEPTING DEBT FROM DISCHARGE

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court on Debtor/plaintiff Robert A. Hobbs' (the "Debtor") complaint which seeks to discharge his obligation to make certain annual payments to his former wife Monica C.P. Hobbs (the "defendant") arising from a decree of dissolution entered on April 19, 1989. After considering the evidence adduced at trial, the Court finds that the Debtor's complaint is not well taken and should be denied. The Court further concludes that the Debtor's debt to the defendant which arose from the decree of disso-

lution should be excepted from discharge under 11 U.S.C. § 523(a)(5).

## FACTS

The Debtor filed a petition under chapter 7 of title 11 on October 13, 1994 (the "Petition Date").

The Debtor and the defendant were married on August 12, 1978 and were granted a dissolution on April 19, 1989 (the "Dissolution"). The Dissolution incorporated a separation agreement entered into between the parties on February 27, 1989 (the "Agreement").

### The Alimony Provision Under the Decree

Under the Agreement, the Debtor paid the defendant $45,000.00 on the date of the Dissolution and $55,000.00 two years after the date of the Dissolution. *See* Agreement, at p. 4, *Article 3. Division of Property, Business Stock and Cash.*

In a provision denoted as *Article 2. Alimony*, the Agreement provides that:

Upon the granting of a dissolution of marriage, the Husband shall pay to Wife the sum of $10,000.00 per year for a period of 10 years beginning on the date of dissolution. Said alimony payments shall terminate upon the death or remarriage of Wife. Husband shall further secure the alimony payments to Wife by obtaining and delivering to Wife a life insurance policy, term in nature, in the amount of $50,000.00 making Wife beneficiary thereof. Husband shall maintain said policy until such time as the alimony obligation contained herein is terminated.

Plaintiff's Exhibit 5, Agreement, at p. 2, *Article 2. Alimony.*

The parties dispute whether the $10,000.00 annual payments to the defendant (the "Annual Payments") represent nondischargeable alimony or a dischargeable property settlement.

### The Negotiations Between the Parties

Attorney William Clark ("Clark"), who represented the Debtor in negotiating the Agreement, testified that the Annual Payments represented "alimony in the nature of a property settlement". Clark testified that his negotiations with the defendant's attorney Bruce Brimley centered on dividing the parties' marital property in accordance with a statement of net worth prepared by the parties' accountant. *See* Plaintiff's Exhibit 2. According to Clark, the Agreement provided for the Annual Payments because the Debtor could not afford to make a lump sum payment and because the Debtor wanted to be able to deduct the yearly payments to the defendant for tax purposes.

Clark further opined that the Annual Payments were actually in the nature of a property settlement because the Annual Payments were secured by $50,000.00 in life insurance and the Annual Payments were not scheduled to terminate on the Debtor's death.

Consistent with Clark's testimony, the Debtor testified that he viewed the Annual Payments as deferred payments based on the value of his assets.

Not surprisingly, the defendant differed with Clark and the Debtor's characterization of the Annual Payments as a property settlement. The defendant testified that she required support at the time of the Dissolution.

### The Parties' Relative Financial Positions at the Time of the Dissolution

The defendant was employed part-time as a salesperson at Sears, Roebuck and Co. during the marriage. According to the schedules filed with the parties' 1988 joint income tax return, the defendant earned $4,601.00 in wages and $1,303.00 in interest income for 1988. *See* Plaintiff's Exhibit 3, parties' joint income tax return, Schedule 1; Plaintiff's Exhibit 3, parties' joint income tax return, Schedule B. However, the defendant testified that she was unemployed for a number of months prior to the Dissolution. The defendant further testified that she underwent counseling for her low self esteem at the time of the Dissolution.

The Debtor was awarded all of the property of the marriage, including two parcels of real estate. The Debtor also assumed all of the marital debts.

The Debtor testified that he served as president of H & O Trucking and Excavating, Inc. ("H & O") at the time of the Disso-

lution, earning approximately $23,000.00 per year. The schedules filed with the parties' 1988 joint income tax return indicate that the Debtor earned $29,645.00 in wages for 1988. *See* Plaintiff's Exhibit 3, parties' joint income tax return, Schedule 1. In addition, the Debtor earned $9,263.00 in interest income in 1988. *See* Plaintiff's Exhibit 3, parties' joint income tax return, Schedule B. The Debtor testified that he viewed his future employments prospects with H & O as "good" at the time of the Dissolution. The Debtor testified that H & O was a "general site contractor" which the Debtor and his brothers founded in 1980.

The Debtor testified that his personal financial position was "fairly good" at the time of the Dissolution. In this connection, the Debtor testified that he received approximately $250,000.00 in proceeds from a life insurance policy when his father died shortly before the time of the Dissolution. In addition, the Debtor testified that he received stock in H & M Sand and Gravel Co. from his father's estate.

### The Parties' Tax Treatment of the Annual Payments

Prior to the Petition Date, the Debtor paid Monica $50,000.00 in accordance with the alimony provision of the Agreement.

The Debtor deducted the Annual Payments to the defendant as alimony on his income tax returns for 1989, 1990, 1991 and 1992 while the defendant reported income based on the Annual Payments.

### *DISCUSSION*

### Applicable Statute

Section 523(a) provides, in pertinent part, that:

[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

... (5) to a ... former spouse ... for alimony to, maintenance for, or support of such spouse ... in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental

unit, or property settlement agreement, but not to the extent that—

... (B) such debt includes a liability designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

11 U.S.C. § 523(a).

### Burden of Proof

■ The defendant bears the burden of establishing that the Annual Payments should be excepted from discharge by the preponderance of the evidence. *Young v. Young (In re Young)*, 35 F.3d 499, 501 (10th Cir.1994) (citation omitted); *see also Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 520 (6th Cir.1993) (non-debtor bears burden of proof under § 523(a)(5)) (citation omitted).

### Whether the Debtor's Debt to the Defendant Which Arose from the Agreement Should be Excepted from Discharge

■ The Court finds that the Debtor's obligation to make the Annual Payments to the defendant under the Agreement should be excepted from discharge under § 523(a)(5).

The Court finds that the parties intended to impose an alimony obligation on the Debtor at the time of the Dissolution.

■ The Court's "initial inquiry must be to ascertain whether the state court or the parties to the divorce intended to create an obligation to provide support". *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1109 (6th Cir.1983); *see also Brody v. Brody (In re Brody)*, 3 F.3d 35, 38 (2nd Cir.1993) (stating that "[a]ll evidence, direct or circumstantial, which tends to illuminate the parties' subjective intent is relevant") (citations omitted). The Court's determination of the parties' intent at the time of the Dissolution "does not turn on one party's post hoc explanation as to his or her state of mind at the time of the agreement, even if uncontradicted". *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 723 (10th Cir.1993); *Benich v. Benich (In re Benich)*, 811 F.2d 943, 945 (5th Cir.1987) (stating that "[w]hile the intention

of the parties is the ultimate question, even the uncontradicted testimony of one of the spouses is not decisive") (footnote omitted). Instead, "the critical inquiry is the shared intent of the parties at the time the obligation arose." *In re Sampson,* 997 F.2d at 723 (citing *Tilley v. Jessee,* 789 F.2d 1074, 1078 (4th Cir.1986)).

The Agreement's characterization of the Debtor's obligation as alimony provides persuasive evidence that the parties intended to create an alimony obligation. *Hughes v. Hughes (In re Hughes),* 164 B.R. 923, 927–28 (E.D.Va.1994). The Court finds Clark's testimony that the Annual Payments were not in the nature of alimony to be unpersuasive.

In addition, the disparity in the parties' financial circumstances at the time of the Dissolution supports the conclusion that the Annual Payments represented an alimony obligation. *See Leppaluoto v. Combs (In re Combs),* 101 B.R. 609, 617 (9th Cir. BAP 1989) (concluded that disparity in parties' earnings supported conclusions that payments were in the nature of support); *see also Shaver v. Shaver,* 736 F.2d 1314, 1316–17 (9th Cir.1984); *cf. In re Calhoun,* 715 F.2d at 1108 n. 7 (stating that one of the factors which bankruptcy courts have examined in determining whether an obligation was in the nature of support is the "relative earning powers of the parties"). Indeed, although the Debtor and Clark opined that the defendant was not in need of support at the time of the dissolution, the Court notes that the defendant's non-alimony taxable income for 1990 approximated $3,233.79. *See* Defendant's Exhibit G.

Moreover, the fact that the Annual Payments were to terminate on the death or remarriage of the defendant supports the conclusion that the parties intended to create an alimony obligation. *In re Fitzgerald,* 9 F.3d at 521.

Furthermore, the Debtor's yearly deduction of the Annual Payments for income tax purposes supports the conclusion that the parties intended to create an alimony obligation. *Sampson v. Sampson (In re Sampson),* 997 F.2d 717, 724 (10th Cir.1993) (citation and footnote omitted); *In re Combs,* 101 B.R. at 616; *Dressler v. Dressler (In re Dressler),* 194 B.R. 290, 297 (Bankr.D.R.I. 1996); *cf. Robb–Fulton v. Robb (In re Robb),* 23 F.3d 895, 898–99 (4th Cir.1994) (held that debtor who deducted payments made to former wife under divorce decree as alimony was estopped from claiming that such payments represented a dischargeable property settlement); *Davidson v. Davidson (In re Davidson),* 947 F.2d 1294, 1296–97 (5th Cir.1991) (held that debtor who deducted payments to former spouse as alimony for income tax purposes was estopped from claiming that such payments represented a dischargeable property settlement).

Although the fact that the Annual Payments were secured by a life insurance policy and were to continue as a charge against the Debtor's estate lends some support to the Debtor's argument that such payments were in the nature of a property settlement, the Court nevertheless concludes that such payments were in the nature of alimony. *See In re Sampson,* 997 F.2d at 724 n. 5 (concluding that debtor's obligation under settlement agreement represented a support obligation notwithstanding the fact that settlement agreement required that debtor's support obligation be secured by life insurance); *see also Benich v. Benich (In re Benich),* 811 F.2d 943 (5th Cir.1987) (finding that permanent alimony was nondischargeable despite the fact that permanent alimony was impermissible under Texas law).

In light of the foregoing, it is therefore

ORDERED that the Debtor's complaint be, and it hereby is, denied with prejudice. It is further

ORDERED that the Debtor's debt to the defendant be, and it hereby is, excepted from discharge.