In re Herbert J. SILLINS, Debtor.

Dolores Sillins, Plaintiff,

v.

Herbert J. Sillins, Defendant.

Bankruptcy No. 00 B 6399.
Adversary No. 00 A 491.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 2, 2001.

John S. Delnero, Erik W. Chalut, Bell, Boyd & Lloyd, LLC, Chicago, IL, for Plaintiff.

Gregory K. Stern, Monica C. O'Brien, Chicago, IL, for Defendant.

## MEMORANDUM OPINION

CAROL A. DOYLE, Bankruptcy Judge.

This adversary proceeding is before the court on a motion for summary judgment filed by plaintiff Dolores Sillins ("Dolores"). Dolores seeks a determination that payments her husband owes her under a divorce judgment are non-dischargeable debts under §§ 523(a)(5) and 523(a)(15) of the Bankruptcy Code. She seeks summary judgment on the grounds that the debtor, who is her former husband Herbert Sillins ("Herbert"), has not met his burden of raising a genuine issue of material fact for trial. This court agrees and awards summary judgment to Dolores.

### Sections 523(a)(5) and (a)(15)

The question presented is whether payments owed by Herbert to Dolores termed "nonmodifiable maintenance and spousal support" in a divorce judgment should be treated as maintenance and support under § 523(a)(5), 11 U.S.C. § 523(a)(5), or whether they should instead be treated as payment of a property settlement covered by § 523(a)(15), 11 U.S.C. § 523(a)(15).[1]

---

1. 11 U.S.C. § 523 provides in pertinent part:

   (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

   (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a govern-

   mental unit, or property settlement agreement, but not to the extent that—

   * * *

   (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

   (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accor-

Under § 523(a)(5), if the court determines that the payments are "actually in the nature of alimony, maintenance or support," then the debt is not dischargeable. However, if the court determines that the payments actually constitute a property settlement rather than maintenance and support, the court must then weigh the ability of the debtor to pay the debt in accordance with § 523(a)(15) before determining whether the debt is dischargeable.

A bankruptcy court is not bound by the characterizations of the state court when determining dischargeability. *In re Wright*, 184 B.R. 318, 321 (Bankr.N.D.Ill. 1995) (citing *In re Maitlen*, 658 F.2d 466, 468 (7th Cir.1981)). In fact, a bankruptcy court is under an obligation to look beyond the language of the state decree to the intent of the parties and the substance of the obligation. *Id.* (citing *In re Goin*, 808 F.2d 1391, 1392 (10th Cir.1987)). The following factors should be considered in determining whether a debt is in the nature of support or maintenance or whether it is properly characterized as a division of property:

(1) whether the obligation terminates upon the death or remarriage of either spouse (termination of the obligation indicates the obligation was for support); (2) whether the obligation is payable in a lump sum or in installments over a period of time (obligation spread over time indicates the obligation was for support); (3) whether the payments attempt to balance the parties' income (payments to balance income indicate the payments were for support); (4) the characterization of the obligation in the decree (obli-

gations described as support indicate the obligation was for support); (5) the placement of the obligation in the decree (obligations under the heading support indicate the obligation was for support); (6) whether there is any mention of support payments (separate mention of support payments indicates the obligation is not for support); (7) whether there are children who need support (if children are of the age when support is required, this indicates the payments may be for support); (8) whether there is a large differential in net income (a large differential in income would indicate the payments were for support); (9) whether the obligation was thought to be taxable to the recipient (payments thought to be taxable indicate the payments were for support); and (10) waivers of maintenance. [Citations omitted].

*In re LeRoy*, 251 B.R. 490, 502–03 (Bankr. N.D.Ill.2000).

## FACTS

The relevant facts in this case are largely uncontested. On March 18, 1999, the Circuit Court of Cook County entered a Judgment for Dissolution of Marriage of Herbert and Dolores Sillins, which incorporated an agreement entered into by the parties. On July 14, 1999, the judgment was amended by a Supplemental Judgment (the judgment as amended is referred to as the "Judgment"). The Judgment provided for Herbert to pay to Dolores the sum of $122,000.00 payable in increments of $1,203 per month for 32 months and then in increments of $1,000 per month for 83 months and a final payment of $310. The payments are de-

---

dance with State or territorial law by a governmental unit unless—
(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of

the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business;

scribed as non-modifiable maintenance and support in a section entitled "Spousal Support/Maintenance."

The Judgment also requires Herbert to secure the payments with a life insurance policy, that the debtor share equally in the educational expenses of the parties' daughter, and that Herbert's obligation to pay and Dolores' right to receive maintenance terminates upon the death of either party. Prior to entry of the Judgment, Dolores obtained an order requiring Herbert to pay Dolores $1,300 per month for temporary maintenance and $560 per month for child support.

The Judgment specifically provides that Herbert's payments to Dolores are intended to be alimony as defined by the Internal Revenue Code so that such payments will be included in Dolores' gross income and may be deducted by Herbert from his gross income. Herbert in fact took the payments as deductions from income for tax years 1997, 1998 and 1999. The tax return for 1998 was filed on April 28, 2000, and his tax return for 1999 was filed on July 1, 2000, both after the commencement of this case.

On March 3, 2000, Herbert filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Schedule J of his petition lists payments of $1,208.00 under the category of "alimony, maintenance and support paid to others." Dolores filed this adversary proceeding, and after some discovery she filed this motion for summary judgment.

*Summary Judgment*

Dolores' motion for summary judgment raises three issues. First, she argues that Herbert is barred as a matter of law under the theory of quasi-estoppel from now claiming that his payments to her were part of a property settlement because he declared them as tax-deductible maintenance and support payments on his income tax returns. Second, she asserts that there is no genuine issue of fact that the payments are maintenance and support for purposes of § 523(a)(5) based on all the uncontested facts of the case. Finally, she argues that even if the payments are for a property settlement, the debt is not dischargeable applying the ability-to-pay test in § 523(a)(15).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Fed. R. Bankr.P. 7056; *Bellaver v. Quanex Corp.,* 200 F.3d 485, 491 (7th Cir.2000). The function of the presiding court is not to weigh evidence and to make credibility determinations or to attempt to determine the truth of the matter but is, rather, "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990). The court views the facts in a light most favorable to the nonmoving party and allows that party the benefit of all reasonable inferences to be drawn from that evidence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Schneiker v. Fortis Ins. Co.,* 200 F.3d 1055, 1057 (7th Cir.2000).

However, "if no reasonable jury could find for the party opposing the motion, it must be granted [citations omitted]." *Murray v. Kutzke,* 967 F.Supp. 337, 341 (N.D.Ill.1997). To survive a motion for summary judgment, the opposing party must counter submitted affidavits with materials of evidentiary quality that create an issue of fact. *Russell v. Acme–Evans Company,* 51 F.3d 64, 67 (7th Cir.1995)(cit-

ing *Winskunas v. Birnbaum,* 23 F.3d 1264, 1267–68 (7th Cir.1994)).

### Quasi-estoppel

■ Dolores contends that Herbert is barred under the doctrine of quasi-estoppel from asserting that the monthly payments to Dolores are a property settlement because he deducted them from his income as maintenance and child support on his tax returns. She relies on two courts of appeals decisions, *In re Robb,* 23 F.3d 895 (4th Cir.1994) and *In re Davidson,* 947 F.2d 1294 (5th Cir.1991). In each of those cases, the court was asked to determine whether payments to be made over time by the debtor to his former wife were in the nature of alimony or maintenance, or whether such payments were in fact the result of a property settlement. In each case, the debtor had treated the payments as alimony for tax purposes. Both courts applied the doctrine of quasi-estoppel to find that the debtors were estopped from discharging their financial obligations to their former wives as property settlements after reaping the benefits of calling the payments alimony on their tax returns.

This quasi-estoppel concept is appealing because of its simplicity and because it prevents a person from taking one position to reap a gain under one statute and then taking the opposite position to reap a gain under another statute. However, the court finds more compelling the reasoning of the Ninth Circuit BAP in *In re Kritt,* 190 B.R. 382 (9th Cir. BAP 1995), in which the court refused to apply the quasi-estoppel doctrine in these circumstances. The court held that the parties' characterization of the transaction on their tax returns is evidence of their intent regarding the transaction but is not controlling. *Id.* at 388. The court set forth three reasons for its conclusion. First, applying the quasi-estoppel doctrine is "inconsistent with the court's obligation to examine the substance, rather than the form of the transaction." *Id.* Second, "section 523(a)(5) serves important public policies that should not be driven by the contents of a person's tax returns." *Id.* Third, under quasi-estoppel the filing of the first tax return after the divorce would permanently place the nature of the transaction beyond the bankruptcy court's inquiry when not even the taxing authorities are bound by the parties' characterization of the transaction. *Id.* at 388–389.

The Tenth Circuit also has rejected the Fourth and Fifth Circuits' position in dicta in *In re Sampson,* 997 F.2d 717, 724 n. 6 (10th Cir.1993). The *Sampson* court, while having a "strong aversion to sanctioning a sham transaction," stated that § 523(a)(5) requires courts to look beyond labels and "might, in the proper case, require a federal court to sanction such a transaction." *Id.* The Seventh Circuit has not ruled on this issue.

The court concludes that, although a party's admissions on his or her tax returns are relevant to the intent of the parties, a hard and fast rule of law in every case is not warranted and would conflict with the court's obligation to look at the substance instead of the form of the transaction. Here, Herbert's tax returns will be considered evidence of his intent regarding the Judgment, but do not alone provide a basis for granting summary judgment to Dolores.

### Herbert Fails to Raise a Genuine Issue of Material Fact

■ However, after considering all the uncontested facts and the evidence in the record, the court finds that there is no genuine issue of material fact regarding the payments. They are clearly in the nature of maintenance and support and not payment of a property settlement. The following undisputed facts demonstrate

this. The Judgment refers to the payments as maintenance and spousal support. The provisions regarding the payments are contained in a section entitled "Spousal Support/Maintenance." The Judgment has a separate section entitled "Property Settlement" in which various property is distributed to the parties. The payments are made on a monthly basis. Prior to entry of the Judgment, Dolores obtained an order requiring Herbert to pay temporary maintenance to Dolores in the amount of $1,300 per month in addition to child support. The payments for maintenance and support in the Judgment are $1,203 for the first 32 months, which is close to the amount of temporary maintenance that Dolores received before the Judgment was entered. The payments terminate upon the death of either party.

The Judgment also specifically provides that the payments are intended to be alimony as defined by the Internal Revenue Code so that the payments will be included in Dolores' gross income and may be deducted by Herbert from his gross income. Herbert in fact deducted the payments from his gross income on his tax returns for the years 1997, 1998 and 1999. The tax return for 1998 was filed on April 28, 2000, and his tax return for 1999 was filed on July 1, 2000, both after the filing of this case. Herbert's Schedule J of his bankruptcy schedules identifies the payments as alimony, maintenance and support. Bankruptcy schedules are sworn admissions, executed under penalty of perjury. Fed.R.Bankr.P. 1008.

In addition, both Dolores and her divorce counsel submitted affidavits stating that the parties intended the payments to be maintenance and support and that they were not the result of a property settlement. Dolores' divorce counsel states in her affidavit that an integral part of the negotiations between the parties and a state court judge who helped settle the matter was the continued payment of maintenance by Herbert so that Dolores could continue to live in accordance with the lifestyle maintained by the parties during the marriage. She further states that at no time during the negotiations did Herbert's counsel ever discuss any "property settlement" payments to Dolores. In fact, Herbert's counsel negotiated intensely about the tax deductions for Herbert for the maintenance payments to Dolores. The Judgment itself and Herbert's prior statements in his tax returns and his bankruptcy schedules are consistent with these assertions by Dolores' divorce counsel.

Herbert denies the assertion in Dolores' Rule 402M Statement of Uncontested Facts that the payments were intended to be for maintenance and support and were not intended to be part of a property settlement or any other arrangement. However, to support this denial, Herbert refers only to a paragraph in his own affidavit. In that affidavit, Herbert does not deny the assertions of Dolores or her counsel regarding the negotiations or what was discussed about the nature of the payments. Instead, he merely states that "I intended the Judgment to be a property settlement or an equalization of marital assets and liabilities." By failing to refute the statements of Dolores or her counsel in their affidavits, Herbert concedes that neither he nor his counsel ever discussed with Dolores, her counsel or the judge mediating the settlement that these monthly payments were for anything other than for maintenance and support. *See Knoblauch v. DEF Express Corporation*, 86 F.3d 684, 689 (7th Cir.1996) (a failure to support a point with specific references to the record allows the court to conclude that the point is conceded).

Nevertheless, Herbert contends that these payments were really intended by

him as part of a property settlement. He describes a loan taken by him and Dolores in May 1992 for $123,819.37 from Transamerica Financial Service, Inc. that was secured by the marital residence, among other properties. He states in his affidavit that he intended the divorce judgment to compensate Dolores for the Transamerica loan. Although he fails to explain this fully, it seems from the court's review of the Judgment that Dolores took the property subject to the loan and that the total of the monies to be received by Dolores under the Judgment is $122,000, an amount close to the amount of the Transamerica indebtedness. However, Herbert never states that Dolores intended the divorce judgment to compensate her for the Transamerica loan or that he or his lawyer communicated his intention to anyone.

■ Herbert's statements of his unilateral unexpressed intent are not sufficient to raise a genuine issue of material fact. First, while intent is crucial to deciding whether payments are in the nature of support or maintenance, only the shared intent of the parties at the time the obligation arose is relevant, not one party's state of mind. *In re Sampson*, 997 F.2d 717, 723 (10th Cir.1993) (citing *In re Benich*, 811 F.2d 943, 945 (5th Cir.1987)); *In re Hobbs*, 197 B.R. 254, 256 (Bankr. N.D.Ohio 1996). Therefore, even if Herbert's affidavit is taken as true, he does not raise a genuine issue of material fact. As discussed above, Herbert has conceded that there was no discussion with any relevant party that the payments were in the nature of a property settlement. Herbert's post hoc explanation that he, in effect, secretly intended the payments to be a property settlement is insufficient to defeat summary judgment.

■ Second, it is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior sworn testimony. *Russell v. Acme–Evans Company*, 51 F.3d 64 (7th Cir.1995); *Diliberti v. United States*, 817 F.2d 1259 (7th Cir.1987); *Murray v. Kutzke*, 967 F.Supp. 337 (N.D.Ill. 1997); *McCoy v. WGN Television*, 758 F.Supp. 1231 (N.D.Ill.1990). Herbert stated in his Schedule J that the payments were alimony, maintenance and support. As noted above, bankruptcy schedules are sworn statements executed under penalty of perjury. In addition, Herbert executed and filed two tax returns taking his payments to Dolores as maintenance deductions after filing his bankruptcy petition. His later affidavit is insufficient to create a genuine issue of material fact.

■ Finally, Herbert raises two factors that mitigate in his favor. The payments are not modifiable (as maintenance payments frequently are) and there is no provision for the payments to terminate upon Dolores' remarriage. Although each of these factors can be indicative of a property settlement, neither is controlling regarding the nature of the payments. *See, e.g., In re Sampson*, 997 F.2d at 724 (nonmodification provision and payments continuing after remarriage were not controlling on issue of whether payments were for maintenance or property settlement); *see also In re Weihs*, 242 F.3d 378, 1 Fed. Appx. 578 (8th Cir.2001) (provision that obligation did not terminate upon remarriage did not overcome otherwise clear expression that obligation was for support). Weighed against all of the evidence to the contrary outlined above, the court concludes that the payments were intended by the parties to be for support and maintenance. The clear language and structure of the contract, as well as Herbert's own actions both before and after the bankruptcy in taking tax deductions and listing the payments as maintenance in

his bankruptcy schedules, all show a shared intent that the payments are for maintenance and support, and not part of a property settlement. A trial is not necessary for the court to weigh all the relevant factors based on the undisputed evidence. Testimony at an evidentiary hearing by Herbert consistent with the statements in his affidavit, no matter how credible, would not change the result of this case, so summary judgment should be granted.[2]

## CONCLUSION

For all of the reasons set forth above, no genuine issue of fact has been raised warranting a trial, summary judgment is awarded to Dolores and the payments due Dolores under the Judgment are a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(5).

---

**2.** Because of this ruling, the court need not address the parties' arguments under

§ 523(a)(15) regarding Herbert's ability to pay.